### W. H. RICHARDSON v. WASHINGTON & COSTLEY BROS.
#### No. 302.

**1. Chattel Mortgage in Equity.**

In equity, a lien may be created without the passing of the legal title. Where one agrees to execute a mortgage upon certain property, and at the time he is called on to perform his agreement he has the ability to do so, equity will either compel its execution, or, in a suit to enforce the lien, will consider that as done which ought to have been done, and enforce the agreement as a mortgage ...................................................... 344

**2. Same—Case in Judgment.**

It appearing that the parties to a mortgage upon the crop to be grown the next year by the mortgagor upon land upon which he had been operating as a tenant, but for which he had no lease for said next year, contemplated the crop raised on the land described in the contract should be brought into existence, and become subject to the lien. Such agreement attached to said crop, and became a lien thereon. Such lien our courts exercising equity powers will enforce ................................................ 346

88  339
90  429

QUESTIONS CERTIFIED from Court of Civil Appeals for Third District, in an appeal from Travis County.

*Walton & Hill* and *L. A. Hill,* for appellant.—The petition is insufficient, in this, that same does not state or show, nor does the chattel mortgage set out in the same show, that the defendant Alexander, at the time of executing said chattel mortgage, had any land of his own, or any lease of land from another, to grow the crop mortgaged, for a longer term than one year (the year 1892); and because the said chattel mortgage does not describe the said crops mortgaged, nor the number of acres grown or to be grown after the year 1892; nor describe upon what land the said crops were to be grown subsequent to the year 1892; and because the same is too vague and indefinite as to all the foregoing, and uncertain as to description of said crops subsequent to the year 1892; and because the same does not set any limit of time of duration of said chattel mortgage, and was and is void as against the statute and law of perpetuities. 10 Law. Rep. Ann., 490; Weil v. Flowers, 13 S. E. Rep., 761; Shaw v. Gilmore, 17 Atl. Rep., 314; Van Vetchen v. McKone, 23 N. Y., 428; 69 Hun, 510; Pennington v. Jones, 57 Iowa, 37.

*John Dowell,* for appellees.—1. The court did not err in overruling the exceptions of the defendant Richardson to the petition of the plaintiffs, because the same stated a good cause of action, in that the same described and set out the property upon which the lien was claimed, and the same shows that it was definite and specific, and that the property in controversy (a portion not being questioned) was actually in existence at the date of the institution of the suit, the same being after-acquired property covered by the terms of the mortgage and bound for the debt sued on, and W. H. Richardson was a second lien holder. Edwards v. Osman, 84 Texas, 656; Baykin v. Rosenfield & Co., 69 Texas, 115; 1 Ct. App. C. C., sec. 595; 1 Jones on Mort., secs. 61, 149–153, 343–346, 365, 366, 528; Mitchell v. Winslow, 2 Story, 630–644; Clark v. Baker, 14 Cal., 612; Kirkaldie v. Larabie, 31 Cal., 455; Christy v. Dana, 34 Cal., 548; Amonett v. Aims, 16 La. Ann., 225; Butt v. Carter, 2 Lowell (Mass.), 458.

2. This mortgage is valid and legal as to the crop of 1893, on the following grounds:

(1) In equity, a mortgage will take after-acquired property not in esse at date of execution of mortgage against mortgagor, and all persons asserting a claim thereto under him, either voluntarily or with notice, or in bankruptcy. As to that part of crop bought by Richardson after institution of suit, after service of citation on him, and while property was in hands of sheriff, he had actual and constructive notice, and he is a wrongdoer.

(2) The mortgage was explicit that plaintiffs had a lien on all crops raised by Alexander on farm of R. F. Jones for the year 1892, or for

the year 1893, or any year. When Richardson took his mortgage Alexander was on this identical farm, making a crop for the year 1893, with crop in potential existence, and plaintiffs' mortgage upon it is a valid lien. And plaintiffs' mortgage being upon file in the county clerk's office in proper book of record of liens, Richardson had notice of it, and of course he is a second lienholder.

DENMAN, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the Third Supreme Judicial District has certified the following question, with accompanying explanatory statement, to wit:

"On the 23rd day of January, 1892, M. C. Alexander had rented and was occupying about 100 acres of land on R. F. Jones' farm, part of the Antonio Navarro grant, in Travis County, Texas, and on said day said Alexander executed the following instruments:

"'GARFIELD, Travis County, Texas, January 23, 1892.

"'September 1, after date, I, we, or either of us, promise to pay to the order of Washington & Costley Bros., at Garfield, in Travis County, Texas, four hundred and sixteen dollars, with interest thereon from date until paid, at the rate of 10 per cent per annum, and if interest be not paid when due, to become as principal, and bear same rate of interest as said principal; and in the event default is made in the payment of this note at maturity, or if it becomes necessary before maturity to collect the same, and it is placed in the hands of an attorney for collection, or suit is brought on the same, then an additional amount, 10 per cent on the amount of said note, shall be added to the same as attorney's fees, and which I, or either of us, promise to pay; and it is expressly understood that I, or either of us, hereby waive all exemptions from forced sale under the laws of this State that may be in us on account of the property hereinafter described, so the same, each and every part of it, shall be subject and liable for the payment of this note.                                    "'M. C. ALEXANDER.
"'Witness:    FRANK RUMLEY.

"'The above obligation is given in settlement for balance due on note and account for 1891, as per settlement agreed upon this day, and said note was for stock to work in my crop for the year 1892, and advances hereafter furnished me by Washington & Costley Bros. for the purpose of enabling me to make, secure, gather, and house a crop for the year 1892, and without which advances it would not be possible for me to make, gather, house, and secure said crop; and it is hereby agreed, in consideration of the premises, that the above amount, together with the amount due for any further advances hereinafter made to me by the said Washington & Costley Bros., are untouched, and shall operate in law as a perfect and bona fide lien upon all crops, either of corn or cotton, or both, that may be grown by me or for me by the persons working under me upon the farm of R. F. Jones, in

Travis County, Texas, for the year 1892. All the indebtedness due by this instrument becomes due and payable on the 1st of October of this year, and should it not be paid, then the amount owing under this instrument, not including the above note, shall bear interest at the rate of 10 per cent per annum until paid, and any default upon my part to pay the above described obligation when due, or the amount due for any other advances, out of the first proceeds of said crop, or if any of said crop or property herein mortgaged shall be sold by me and the money thereof not turned over to said Washington & Costley Bros. or applied to the payment of this instrument, then it is agreed, that all of the debt or debts secured by this mortgage shall become due and payable at once, and that said Washington & Costley Bros. may or shall enter upon said premises or elsewhere and take possession of said crops and stock, or such portion of the same as may be sufficient in amount to pay off and discharge this obligation, and such necessary expenses as may be incurred in collecting the same. The property used in the cultivation of said crops being of the following description, and upon which a lien in addition to that upon said crops is hereby given for payment of all the above indebtedness upon the terms and conditions therein stated, viz: One dun stallion with black stripe down his back, about 14 hands high, 8 or 9 years old, unbranded; also one bay paint mare, 10 years old, 13½ hands high, branded T Q on left thigh; also two gray horses 7 or 8 years old, about 14½ hands high, branded on left thigh; also one suckling colt of the bay paint mare; also two bay 2-year-old fillies, unbranded; also two dark bay horse mules about 6 years old, about 14½ hands high, unbranded, being the same two mules purchased by me from R. F. Jones last year, 1891; also one three-inch Tennessee wagon, it being the same wagon purchased by me from John Hillebrand, Austin, Texas, about two years ago; also one light dun horse about 15 hands high, about 12 years old, brand not remembered.

" 'The crop mortgaged by me to Washington & Costley Bros. consists of about 100 acres of R. F. Jones' farm, in Travis County, Texas, in the Antonio Navarro grant. Should any further advances, either of goods, wares, merchandise, or property, be made to me under this instrument, then the above lien is to secure the same, whether the same is made this year or any year hereafter. And I further declare, that I have given no other lien or mortgage of any kind on the above named crops or on the above described property, and that the title to said property is perfect in me; and in the event of a crop failure from drouth, excessive rains, hailstorms, etc., said indebtedness are not to be paid, or if they are not paid from any other cause, then this lien shall remain in full force and effect, and cover the succeeding crops of the succeeding years until fully paid. On any and all indebtedness collected under this instrument I promise and agree to pay 10 per cent on amount due as attorney's fees, if placed in the hands of an attorney for collection, or suit is brought on the same. Any change in this agreement as to any of its terms and conditions hereinafter

made, to be valid and binding, must be in writing and duly signed by all parties.

"'Witness my hand, this 23rd day of January, 1892.

"'Witnesses:                                    "'M. C. ALEXANDER.

"'ARTHUR WALKER, FRANK RUMLEY.'

"At the time of the execution of said instruments, said Alexander had been residing on and cultivating said land under leases from said Jones for five or six years, but at that time he had no lease or contract for the same for the year 1893. In October or November, 1892, said Alexander made a contract with said Jones for the lease of said premises for the year 1893, and he remained thereon and cultivated and raised a crop on said land for the year 1893.

"Appellees, Washington & Costley Bros., brought suit against M. C. Alexander on the aforesaid instruments, alleging, that they had furnished him with various articles of merchandise, groceries, and provisions, under said mortgage, during the years 1892 and 1893, and that, by reason of the execution of said instruments and the sale to him of said merchandise, groceries, and provisions, said Alexander was indebted to the plaintiffs in a designated sum within the jurisdiction of the County Court. Appellant, W. H. Richardson, was made a party defendant to the suit, appellees alleging that he was setting up a claim to some of the property covered by the mortgage, upon which appellees ask for a foreclosure of said mortgage.

"The testimony shows, that said Richardson claims under a subsequent mortgage, but appellees' mortgage, being duly recorded before appellant took his mortgage, is, if valid, superior to appellant's. The property in controversy is part of the crop raised by Alexander on the premises aforesaid during the year 1893.

"With this explanatory statement, the Court of Civil Appeals for the Third Supreme Judicial District certifies to the Supreme Court of the State for decision the following question: Have the appellees, Washington & Costley Bros., a mortgage lien on the crop raised by said Alexander on the aforesaid premises during the year 1893? In other words, under the circumstances stated, at the time the mortgage in question was executed, had M. C. Alexander the power to create a contract lien on such crop as he might, during the year 1893, raise on the land, which he had for several years and then occupied as tenant, but which, at that time, he had no legal interest in, or right for the year 1893?"

The principle involved in the decision of the question propounded is of vast importance to the commercial world.

It is well settled at law, that a mortgage upon personal property not owned by the mortgagor, or not in esse, actual or potential, at the date of the mortgage, is void, unless, after the mortgagor subsequently acquires title thereto, some act be done, such as delivery of possession to the mortgagee, indicating a purpose to bring it within the terms of the

mortgage. The reason of this rule at law is, that a mortgage is a conveyance of the title to the mortgagee, and title can not be conveyed where the mortgagor has none, or where the property conveyed is not in esse. In accordance with these principles, in a court of law it has been held, that a mortgage of goods which the mortgagor does not own at the time the mortgage is made, though he afterwards acquires them, is void (Jones v. Richardson, 10 Metcalf, 481.); and that a sale of fish hereafter to be caught in the sea, does not pass title to the fish when caught; that a man may sell or mortgage wool to grow upon his own sheep, but not upon the sheep of another; and that he may sell or mortgage crops to grow upon his own land, but not upon land in which he has no interest. Low v. Pew, 108 Mass., 347. In some States the doctrine has been carried so far as to hold, that a mortgage upon a crop of grain at the time it was planted, but before it was up or presented the appearance of growing grain, was void, upon the ground that the crop was not in esse at the date of the mortgage. Comstocks v. Scales, 7 Wis., 159. Since at law a mortgage of personal property not owned by the mortgagor or not in esse, actually or potentially, was void, in the absence of a subsequent act indicating an intention of subjecting it to the mortgage, such as taking possession, it became important, in case of things having only a potential existence, such as the wool to be grown on sheep or the crops to be grown on land, for the mortgagee to show, that at the date of the mortgage the mortgagor had an interest in the sheep or land, and therefore had a potential ownership in the wool or crops, as the case might be, and if he failed to make such proof, upon issue joined thereon, his mortgage would fail in a court of law. This doctrine, however, is confined to suits at law, and a failure to confine it thereto has often led to confusion, and sometimes has produced the erroneous impression that a mortgage executed by a grantor upon property to which he then had no title, or which was not then in esse, actual or potential, was void for all purposes. The true rule is, that such a mortgage is ineffectual to pass the legal title, and therefore will not be considered in a court of law.

In equity, however, a lien may be created without the passing of the legal title. Where one agrees to execute a mortgage on certain property, and at the time he is called upon to perform his agreement he has the ability to do so, equity will either compel its execution, or, in a suit to enforce the lien, will consider that as done which ought to have been done, and enforce the agreement as a mortgage. It makes no difference whether at the date of the agreement the party agreeing had it in his power to perform the agreement, provided, at the date of the decree, it appears to the chancellor he has such power. Therefore, if A agree that B shall have a lien upon the wool to be grown on certain sheep, or the crop to be raised on certain land, neither the sheep nor the land being owned by A, it is no answer to a suit brought by B for the enforcement of such lien, for A to show such nonownership, if he be now the owner of the wool or crops; for it would be inequitable in

A to defeat his agreement that B should have a lien upon the very wool or crops, by asserting that he did not, at the date of the agreement, have any title thereto.   We do not wish to be understood as intimating that a court of equity may foreclose a lien upon property which it can not clearly determine that the parties, at the date of the contract, intended should become subject to such lien when acquired by the grantor, or when it came into existence.   On the contrary, a court of equity will not make a contract or create a lien for the parties, and therefore will not foreclose a lien upon property not in esse, or not owned by the grantor, at the date of the contract, unless it is clear, that at such date the parties thereto anticipated the acquisition by the grantor of the very property upon which the lien is sought to be fixed and foreclosed, and intended that it should be subject thereto.

Therefore, in such equitable proceeding, the circumstances attending the particular transaction must be such that the court can identify the particular property upon which the lien was intended to be created, and unless it can do so, it will not fix or enforce a lien; for in doing so, it might fix and enforce a lien upon property which the parties did not at the time intend to subject thereto.   In order to determine whether the property upon which the lien is sought to be foreclosed is identical with that referred to by the parties in the contract, the question as to whether the parties contemplated that the wool was to be grown upon certain sheep, or the crops raised on certain land, would be material evidence; but the nonownership of the sheep or land could not defeat the lien, if the court, from the contract, read in the light of all the circumstances surrounding its execution, could identify the wool or crop, upon which the lien is sought to be foreclosed, as being the same contemplated by the contract.

Thus, since the ownership of the property by the mortgagor and its existence, actual or potential, at the date of the contract, are not *essential* to the validity of a lien in equity, as it was to a mortgage at law, the question of the ownership of the sheep or land at the date of the contract is mainly important, in an equitable proceeding to establish or foreclose a lien, as a circumstance tending to identify with certainty the wool or crops sought to be subjected to such lien as being the very property which the parties, at the date of the contract, contemplated would come into existence and ownership of the grantor, and thereby become subject thereto.

As early as 1843, Judge Story, in the leading case of Mitchell v. Winslow, 2 Story's Reports, 635, laid down the rule upon which the equitable doctrine is based, as follows:   "It seems to me a clear result of all the authorities, that wherever the parties by their contract intended to create a positive lien or charge, either upon real or upon personal property, whether then owned by the assignor or contractor or not, or if personal property, whether it is then in esse or not, it attaches in equity as a lien or charge upon the particular property, as soon as the assignor or contractor acquires a title thereto, against the

latter and all persons asserting a claim thereto under him." See also, Brett v. Carter, 2 Lowell, 458. In this case, Judge Story held that a mortgage intended to apply to subsequently acquired machinery was a valid lien thereon in equity, though not at law.

At the time this opinion was delivered by this distinguished jurist the courts seem to have been at sea upon the question, both in England and America, and it seems not to have been settled in England until 1862, when the leading case of Holroyd v. Marshall was decided by the House of Lords, reviewing, with great ability, the previous English decisions relating to the subject, and holding the same doctrine announced by Judge Story, though not adverting to his opinion. Holroyd v. Marshall, 10 H. L. C., 191.

It is well established, that a mortgage of the personal and real property of a railway to be hereafter acquired, that a mortgage of crops to be raised during a series of years to secure rents, that a mortgage of the earnings of a ship on future voyages to secure advances, are all valid in equity, though not at law. Pennock et al. v. Coe, 23 How., 131; Railway v. Woelpper, 64 Pa. St., 372; Butt v. Ellett, 19 Wall., 546; Everman & Co. v. Robb, 52 Miss., 657; Sillers et ux. v. Lester et al., 48 Miss., 523; In re Ship Warre, 8 Price, 269; Fletcher v. Auber, 1 Jac. & W., 526; Douglas v. Russell, 4 Sim. (Eng. Ch.), 524.

Applying the principles above discussed to the case at bar, we are of the opinion, that the parties to the contract at the time of its execution contemplated that the very crop raised on the 100 acres of land therein described, during the year 1893, should be brought into existence, and intended that it should become subject to the lien of said contract, and therefore said agreement, in equity, attached to and became a lien upon the same. Our courts administer both law and equity in the same cause, and therefore we answer both questions in the affirmative.

Delivered June 17, 1895.