PERKINS et al. v. ALEXANDER.
(No. 8140.)

(Court of Civil Appeals of Texas. Dallas. Feb. 15, 1919.)

1. CHATTEL MORTGAGES ⬥33—ON CROPS TO BE GROWN—ENFORCEMENT.

A chattel mortgage on future crops is enforceable in equity, when the crops come into the possession of the mortgagor, if their acquisition was contemplated when the mortgage was made.

2. CHATTEL MORTGAGES ⬥48 — FUTURE CROPS—DESCRIPTION—SUFFICIENCY.

It is not necessary to name the year in which the crops are to be grown, in order to make the mortgage on a future crop a valid one, since what the parties contemplated at the time controls.

3. CHATTEL MORTGAGES ⬥48 — ON FUTURE CROP—EVIDENCE.

In suit to foreclose a mortgage covering all crops grown for the year 1915 and all succeeding years, evidence that the mortgagor was plaintiff's tenant in 1915, and continued as such during 1916 and 1917, sufficiently showed that the parties contemplated when the mortgage was made that a crop would be grown on the leased land in 1917.

4. PLEADING ⬥228—EXCEPTION TO PETITION —QUESTIONS PRESENTED.

In suit to foreclose mortgage covering crop for the year 1915 and all succeeding years, whether the parties contemplated that a crop would be grown on the premises in 1917 was in a measure a question of fact, which could not be determined by exception to plaintiff's petition.

5. EVIDENCE ⬥460(12)—SITUS OF PROPERTY —PAROL EVIDENCE.

In suit to foreclose a mortgage upon all crops "grown on the farm I am now living on," the situs of the land could be made certain by parol evidence.

6. BANKRUPTCY ⬥438—DEFENSE TO SUIT— PAYEE'S BANKRUPTCY.

Where plaintiff failed to schedule note in bankruptcy proceeding and inferentially concealed it from trustee, he could not, after having been adjudged a bankrupt, maintain suit on note and foreclose mortgage securing it, without showing that trustee had not elected to claim note, or refused to do so.

7. TRIAL ⬥260(9)—INSTRUCTION SUBSTANTIALLY GIVEN—REFUSAL.

Instruction that, if plaintiff mortgagee authorized or knowingly permitted mortgagor to

sell mortgaged property in open market, there would be a waiver of mortgage, though mortgagor failed to properly apply proceeds, *held* substantially covered by the more favorable charge given.

8. TRIAL ☜229—INSTRUCTIONS—REPETITION OF ISSUES.

Where issue whether plaintiff was precluded from foreclosing mortgage, because of having authorized or ratified sale of mortgaged property in open market, was presented by given instructions as one of waiver, defendant was not entitled to have the issue presented as one of estoppel.

9. JUDGMENT ☜256(1)—VERDICT AND FINDINGS—NECESSITY.

Although execution of chattel mortgage was undisputed, where court directed jury to find for its foreclosure if they found for plaintiff on the other issues, foreclosure could not be had without an express finding for foreclosure.

Appeal from Freestone County Court; G. W. Fryer, Judge.

Suit by Ernest Alexander against Cornelius Perkins and another. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

A. B. Rennolds, of Mexia, and Lex Smith, of Fairfield, for appellants.

McVey & McVey, of Teague, for appellee.

RASBURY, J. February 5, 1915, Cornelius Perkins executed and delivered to Ernest Alexander his negotiable promissory note for $360.10, providing for conventional interest and conditional attorney's fees, due September 15, 1915, and secured in payment by chattel mortgage executed and delivered concurrently with the note. January 3, 1918, appellee, Ernest Alexander, sued appellant Cornelius Perkins to recover the amount due on the note and to foreclose the mortgage lien securing payment thereof, joining the appellant Paul Norman in the suit, and alleging in substance that he had purchased five bales of cotton covered by the mortgage lien with constructive notice thereof. Prayer was for judgment for the sum due on the note, foreclosure of the lien against both appellants, and alternately for judgment against appellant Norman in event he had disposed of the cotton purchased by him for the value thereof. There was trial to jury, which returned verdict for appellee, Alexander, against appellant Perkins for the sum then due on the note, and against appellant Norman for $250. Judgment followed the verdict, and in addition foreclosed the chattel mortgage lien on the crops grown by appellant Perkins for the year 1917. From the judgment recited, Perkins and Norman have appealed and assigned errors.

The first three assignments of error challenge the action of the trial judge in overruling exceptions presented by appellants to appellee's petition, to which was appended a copy of the chattel mortgage. The effect of the exceptions is to assert that, the chattel mortgage was insufficient to create a lien on crops grown subsequent to its execution, because it did not specify the future crop, by year, and failed to describe the land upon which such crops were to be grown and its situs. The provision in the chattel mortgage which undertakes to describe the property conveyed recites that appellant Perkins bargains, sells, and conveys to appellee, Ernest Alexander, etc.,

"all crops of cotton and corn or any other crops grown on the farm I am now living on, said farm being the one sold to Ernest Alexander, or any other crops that I may raise on any other land for the year 1915 and all succeeding years until the amount of this note is paid."

[1] It is settled law in this state that chattel mortgages on future crops are enforceable in equity. Richardson v. Washington, 88 Tex. 345, 31 S. W. 614. The distinction between proceedings in law and equity in such cases is elaborately and thoroughly expounded in the case cited, and we apprehend it is unnecessary to restate in this opinion those reasons, but will confine ourselves to an application of the facts in the present case to the rule there stated. That rule in final analysis, as reflected in the syllabus, is that a chattel mortgage lien given on crops not then in existence and to be grown on land to which the mortgagor has no lease at the time or does not own may be enforced in equity on the crops when they do come into possession of the mortgagor, if their acquisition was contemplated at the time the mortgage was made. Omitting the reference to crops grown on other lands, and other matter which does not affect the meaning, the chattel mortgage under discussion was to be upon—

"all * * * cotton * * * grown on the farm I am now living on * * * for the year 1915 and all succeeding years until the amount of this note is paid."

[2] We do not understand that it is absolutely necessary to name the year in which the crops are to be grown, in order to make the mortgage a valid one. What the parties contemplated at the time controls. In the case cited the mortgage which was declared a valid one was for the year 1892 and "succeeding years" until the debt was paid. The only other facts tending to show what the parties contemplated at the time was that Richardson was a tenant at the time the mortgage was given, and had been for five or six years prior thereto, and in the latter part of 1892 became a tenant for the year 1893. In holding that the facts related sufficiently established that the parties, at the

time the mortgage was executed, contemplated and intended to cover the crops which might be grown on the land in the year 1893, the court declared that—

"If A. agree that B. shall have a lien upon the wool to be grown on certain sheep or the crop to be raised on certain land, neither the sheep nor the land being owned by A., it is no answer to the suit brought by B. for the enforcement of such lien for A. to show such nonownership, if he be now the owner of the wool or crops."

[3] In the case at bar the evidence shows that Perkins was a tenant on the Alexander farm in 1915, and inferentially prior thereto, and continued as such tenant during 1916 and 1917. Such facts are as strong, in our opinion, as those in the Washington Case for the purpose of showing that the parties contemplated when the mortgage was given that a crop would be grown on the leased land in the year 1917. There was, therefore, in our opinion, no error in overruling the exceptions.

[4] Further, it is obvious, from what we have said, and from the Washington Case, that what the parties contemplated is in a measure a question of fact, and a matter that could not be determined by exception.

[5] As much can be said concerning the identification of the leased land. While there is nothing in the chattel mortgage which alone describes and fixes the situs of the land, at the same time such situs may be made certain by parol testimony, which is always admissible in such cases.

[6] It is next urged that the court erred in refusing to peremptorily direct verdict for the appellants on the ground that appellee had no title to or interest in the note sued on. The facts on the issue so presented are few and are not in controversy, and fail to disclose many essential facts necessary to dispose of the point. Appellee, before the institution of the present suit, was adjudged a bankrupt. At the time of the adjudication appellee was the owner of, but failed to schedule, the note sued on. The reason why he did not schedule it was that it was in the hands of creditors as collateral security. After appellee was discharged in bankruptcy, he paid the debt for which the note sued on was security, and in that manner received the note. In Lasater v. National Bank, 96 Tex. 345, 72 S. W. 1057, our Supreme Court declared generally that, after the bankrupt's estate had been administered and the trustee discharged, the bankrupt could recover unadministered assets. In that case the bankrupt sued to recover under federal statute double the amount of usurious interest paid a national bank, and which right of action accrued to him before he was adjudged a bankrupt. Subsequently the case reached the Supreme Court of the United States. First National Bank v. Lasater, 196 U. S. 115, 25 Sup. Ct. 206, 49 L. Ed. 408. There the judgment of our Supreme Court was reversed, and the proceeding remanded to the district court. The holding of that court in substance was that the right to assert the cause of action for the usury penalty was transferred to the trustee when Lasater was declared a bankrupt, and that while the trustee was not bound to accept property of the bankrupt of an onerous or unprofitable character, yet the trustee had a reasonable time in which to elect to take such assets, but that such doctrine did not obtain when the trustee was ignorant of the existence of the property and had had no opportunity to make an election, adding that the claim for the usury penalty was something to which the creditors were entitled, and could not be appropriated by the bankrupt by withholding knowledge of its existence.

In the light of the rule substantially quoted, the note sued on in the present case and incidentally the security of the chattel mortgage was transferred to appellee's trustee in bankruptcy, and when that fact was shown, together with the further fact that appellee had omitted to schedule same, the burden of proof was upon appellee to show that the trustee had elected not to claim same, or had failed or refused to do. so, before he could maintain suit thereon. Just what the facts are concerning the proceedings in bankruptcy, as they affect appellee's right to assert ownership in the note, do not appear from the record. It is not shown when he was adjudged a bankrupt, when he was discharged, whether the trustee knew or ought to have known of the claim omitted from the schedule, its value, and the amount of the debt it secured, and various other facts which might have determined the issue. The record discloses the bare fact that appellee omitted the note from his schedules and inferentially concealed it from the trustee. In such connection in Dushane v. Beall, 161 U. S. 513, 16 Sup. Ct. 637, 40 L. Ed. 791, it is said, if the trustee allows—

"the bankrupt, after his discharge, by the expenditure of labor and money, to save the assets and render them valuable, they could not be permitted to assert title against him."

The record here contains no fact or circumstance which can be held as support for the application of the rules briefly referred to. As a consequence the court, in our opinion, erred in refusing the requested charge.

[7] Complaint is made of the refusal of the court to allow special charge requested by appellant, which told the jury, in substance, that if they believed from the evidence that appellee authorized or knowingly permitted Cornelius Perkins to sell the mortgaged cotton in the open market, and relied on Perkins to account for the proceeds, such would be a waiver of the mortgage, even though Perkins failed to properly apply the

proceeds. The court charged the jury, in substance, that if they found that appellee, Alexander, authorized or permitted Cornelius Perkins to sell the cotton in open market, or that he ratified the sale thereof, to find for appellant Norman. We think the court did not err in the ·respect claimed, since the charge given and the one refused are substantially the same, save that perhaps the charge refused is less favorable to appellant.

[8] Another charge presenting the same issue as one of estoppel was requested by appellant and refused by the court, of which complaint is also made. The charge was ·properly refused, since appellant was entitled to have the issue presented but once however clothed.

.[9] In view of another trial, we call attention to the fact that while the record shows that the execution of the chattel mortgage was undisputed, and while the court charged the jury to find for its foreclosure if they found for appellee on other issues, it appears from the record that the jury failed to so find. The rule is that foreclosure in such cases may not be had without an express finding by the jury in that respect. Ablowich v. Greenville National Bank, 95 Tex. 429, 67 S. W. 79, 881.

For the reason that, in our opinion, the court erred in refusing the charge challenging the sufficiency of the evidence to show appellee's ownership of the note, the cause is reversed and remanded for another trial.

⊕≈For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error denied March 19, 1919.