## SOUTH TEXAS IMPLEMENT & MACHINERY CO. et al. v. ANAHUAC CANAL CO. et al.   (No. 8579.)*

(Court of Civil Appeals of Texas. Galveston. Jan. 29, 1925. Rehearing Denied March 12, 1925.)

1. **Chattel mortgages** ⬤⟿48—**Crop mortgage held not void for insufficiency of description.**

Under Rev. St. arts. 5656, 5661, registered mortgage on crop being grown and to be thereafter planted in C. county or any other county in 1920, and succeeding years, until debts were satisfied, *held* not void for insufficiency of description of 1921 crop, as against subsequent creditors and lienors who had knowledge of facts.

2. **Chattel mortgages** ⬤⟿150(3) — **Registered crop mortgage held constructive notice mortgage covered succeeding years.**

Where creditors, who knew that crop mortgagor was indebted to bank and had given mortgage therefor, contented themselves with examining file register which merely showed mortgage covered 1920 crop without examining mortgage itself, they had constructive notice that mortgage covered succeeding years.

3. **Chattel mortgages** ⬤⟿17—**Ownership of land mainly important to identify crop covered by mortgage.**

Since ownership of property by mortgagor and its existence at date thereof are not essential to validity of mortgage lien in equity, question of ownership of land is mainly important in equity proceeding to establish or foreclose lien to identify crop sought to be subjected to lien.

Error from District Court, Harris County; W. E. Monteith, Judge.

Bill by the Standard Rice Company interpleading the South Texas Implement & Machinery Company, the Anahuac Canal Company, and others. Judgment for the Anahuac Canal Company and others, and the South Texas Implement & Machinery Company and others bring error. Affirmed.

Baker, Botts, Parker & Garwood and Hunt & Teagle, all of Houston, for plaintiff in error, R. B. George.

---

B. F. Louis, of Houston, for defendants in error.

GRAVES, J. This cause involves a controversy between a number of rival claimants to a fund of $4,174.19 in possession of the Standard Rice Company, and representing the proceeds of the sale to it by G. E. Barrow of his rice crop grown during the year 1921 on a farm he was cultivating in Chambers' county, Tex. After buying the rice but before paying for it, the rice company being besieged by different creditors of Barrow—one of them having run a garnishment on it out of the district court of Chambers county—went into the district court of Harris county, and, by bill of interpleader, sued Barrow and all these claimants under him, saying that it held the fund as disinterested stakeholder only, that it claimed no beneficial interest therein except for expenses in bringing the suit, and asking the court to enjoin the prosecution of the garnishment suit in the meanwhile and to determine to whom it should pay the money, less its expenses, depositing the full sum in the registry of the court.

After a temporary injunction restraining further action in the Chambers county garnishment suit, pending the trial of this one, had been issued, all the parties thus sued by the rice company other than Barrow himself, who wholly defaulted, appeared and answered, setting up their several claims against the fund so in court including their different contentions as to the order in which they should be allowed. These parties were: South Texas Implement & Machinery Company; R. B. George, doing business as the R. B. George Machinery Company; the Humble Oil & Refining Company; the Anahuac Canal Company; and the Chambers County State Bank.

The trial court allowed the claims of the Humble Oil Company, the canal company, and the rice company for its court expenses, to be paid out of the fund in court, the balance of the same to go to the bank, denying the machinery company and George any interest in it, but giving each a personal judgment against Barrow.

The machinery company and George, as plaintiffs in error, bring the cause here, agreeing between themselves that the former's claim is ahead of the latter's but jointly and severally contending that both are prior to that of the bank; they do not appeal from the lower court's decree in favor of the rice company, which accordingly became final as there determined; and both also concede it to be immaterial on appeal that the trial court gave the claims of the oil and canal company priority over them, since the fund is sufficient in amount to pay those claims as well as their own in full. The contest in this court is therefore between the two plaintiffs in error, who make common cause upon the one hand, and the Chambers County State Bank upon the other.

In limine, however, it seems to this court that both sides in one respect mistake and misconstrue the legal effect of the trial court's judgment in giving the bank's claim priority over those of the plaintiffs in error, in that both appear to assume that this action was in part at least based upon the garnishment proceedings pending in the district court of Chambers county. We do not so interpret the decree. On the contrary, this judgment, while reciting that the bank had obtained a judgment against Barrow for its debt in the district court of Chambers county, which it recognizes by directing the application as a payment thereon of the amount awarded the bank here, expressly enjoins the latter from further prosecution of the garnishment suit and independently grants it a recovery, reciting in that connection that its original mortgage from Barrow, together with testimony in support of the same, was in evidence; in other words, it thus appears that the trial court, having before it all the necessary parties and evidence, determined upon its own findings, independently of the garnishment proceedings in the sister court, that the bank was entitled to the recovery here had by virtue of its original mortgage. It then merely directed that the amount of such recovery be credited on the bank's judgment against Barrow, which it found the Chambers county district court had rendered.

[1] These garnishment proceedings and all problems that might arise out of them may, therefore, be laid out of the case as now presented. The question here then is reduced to one of whether or not the court erred in giving priority to the bank's mortgage of date June 17, 1920, over that of the machinery company dated April 14, 1921, or that of R. B. George of date September 17, 1921.

In turn, we think the solution of that inquiry depends upon whether or not the bank's mortgage, since it was, earlier in time and its validity in other respects was not challenged, may be properly held, in the circumstances appearing, to have created a valid lien between the parties and as against the machinery concerns upon Barrow's rice crop for 1921, from which the fund in court was derived.

Plaintiffs in error insist that it does neither because of no sufficient description of or reference to the crop for that year, which at the date of the instrument had not been planted, and that it is absolutely void as to subsequent creditors and lienholders like themselves, citing and relying upon these as their main authorities: Barrow v. San Angelo National Bank (Tex. Civ. App.) 138 S. W. 142, at page 144; Williams v. King et

al. (Tex. Civ. App.) 206 S. W. 106; Dupree v. McClanahan, 1 White & W. Civ. Cas. Ct. App. §§ 594 to 595; Richardson v. Washington & Costley Bros., 88 Tex. 339, 31 S. W. 614; Mitchell v. Winslow, 11 Fed. Cas. No. 9673, 527, at page 533, 2 Story, 635; Butt v. Ellett, 19 Wall. 546, 22 L. Ed. 183; McDavid et al. v. Phillips, 100 Tex. 73, 94 S. W. 1131, 1132; Watson v. Paddleford & Son (Tex. Civ. App.) 220 S. W. 779; Id., 110 Tex. 525, 221 S. W. 569; McKinney v. Ellison et al. (Tex. Civ. App.) 75 S. W. 55; Hamilton Nat. Bank v. Harris (Tex. Civ. App.) 260 S. W. 318; McConnell et al. v. Langdon, 3 Idaho (Hasb.) 157, 28 P. 403; Pennington v. Jones, 57 Iowa, 37, 10 N. W. 274; Barr v. Cannon, 69 Iowa, 20, 28 N. W. 413.

We cannot agree with them, but think that, as applied to the facts here shown, the cited case of Richardson v. Washington, 88 Tex. 339, 31 S. W. 614, rules the question presented adversely to their contention.

Barrow in the chattel mortgage in question, bearing date June 17, 1920, filed and duly registered in the county clerk's office of Chambers county on June 30, 1920, for a named consideration paid by the Chambers County State Bank, bargains, sells, and conveys to the bank:

"The following described personal property now located and situated in the county of Chambers, state of Texas, to wit:

"My interest in about 200 acres of rice now being watered by me, with this season, being of blue rose variety." (Then follows a provision as to cattle and other live stock.) "Also all other crops which I may raise, acquire, cultivate or have cultivated in said county or any other county in Texas, except such crops as are specially excepted herein. In the case of crops which have not been planted, it is specially represented by the mortgagor that the advance herein contracted is for the purpose of enabling said mortgagor to make said crops. And this lien shall continue and extend to cover the crops in succeeding years until all debts of this mortgage to said bank are fully satisfied."

Then follows a recital that the above conveyance is intended as a mortgage to secure a note dated June 17, 1920, for $750, and also to secure the payment of all other indebtedness now due and owing the bank, as well as all indebtedness hereafter to become due and owing the bank. Then follows a recital that the mortgage is given and received on the representation and condition: (1) That the mortgagor is the full and lawful owner of said property, that it is fully paid for and free and clear of all liens and incumbrances, and that the mortgagor has a perfect right to give a mortgage thereon; (2) that as long as the mortgagor is in possession of the property it shall not be sold, mortaged, or removed from the premises described above without the written consent of the bank, and that the mortgagor will use the utmost diligence and care to preserve the property from waste or destruction.

Thus by the filing and due registration thereof in June of 1920 (the statutes, R. S. arts. 5656 and 5661, requiring the original instrument to be deposited and left for inspection of all parties interested in the clerk's office and charging all persons with notice thereof), the two machinery companies at the time they acquired their liens had constructive notice of the existence of the bank's mortgage and all its recitals, inclusive of the one purporting to give a lien on Barrow's crops for 1920 "and succeeding years until all his debts to the bank had been fully satisfied." Not only so, but the undisputed evidence received at the trial also shows that both of them independently had through their agents actual knowledge of facts sufficient in law to charge them with notice of its existence and contents, as well as of the fact that the crop to be raised upon the same land in 1921 was within the contemplation of the parties to it; in other words, they knew enough to put them upon an inquiry which, if properly pursued, would have led to the disclosure of all these things.

[2] For instance, being thoroughly familiar with the conditions in Chambers county out of which the transactions here involved arose, they knew the precise location of the farm Barrow cultivated both in 1920 and 1921, had seen his crops growing thereon during both years, knowing at the latter time that the land he was so farming in 1921 "was a part of the same land he was farming in 1920"; Barrow himself testifying that he owned part of this land and that the balance belonged to the Barrow estate. They knew Barrow's financial condition, that he was then heavily indebted to the bank and had given it a mortgage in 1920, to secure the indebtedness. They also in fact examined the chattel mortgage records of the county and found the due registration of this mortgage to the bank given in 1920, but did not at that time read the original instrument itself, which the statutes above cited required to be kept there for that purpose, but contented themselves with looking at the file register only and, from the fact that as there shown it appeared only to relate to 1920, concluded that it did not apply to the crop of 1921.

[3] This composite result of constructive notice from the record and of outside information legally compelling the following up of a trail that would have led to an ascertainment of all the facts differentiates the cause at bar on the facts from many of those relied upon by plaintiffs in error, and brings it squarely under the principle thus applied by our Supreme Court through Judge Denman in Richardson v. Washington, supra:

"In order to determine whether the property upon which the lien is sought to be foreclosed is identical with that referred to by the parties in the contract, the question as to whether the parties contemplated that the wool was to be grown upon certain sheep, or the crops raised on certain land, would be material evidence; but the nonownership of the sheep or land could not defeat the lien, if the court, from the contract, read in the light of all the circumstances surrounding its execution, could identify the wool or crop, upon which the lien is sought to be foreclosed, as being the same contemplated by the contract.

"Thus, since the ownership of the property by the mortgagor and its existence, actual or potential, at the date of the contract, are not essential to the validity of a lien in equity, as it was to a mortgage at law, the question of the ownership of the sheep or land at the date of the contract is mainly important, in an equitable proceeding to establish or foreclose a lien, as a circumstance tending to identify with certainty the wool or crops sought to be subjected to such lien as being the very property which the parties, at the date of the contract, contemplated would come into existence and ownership of the grantor, and thereby become subject thereto.

"As early as 1843, Judge Story, in the leading case of Mitchell v. Winslow, 2 Story's Reports, 635, laid down the rule upon which the equitable doctrine is based, as follows: 'It seems to me a clear result of all the authorities, that wherever the parties by their contract intended to create a positive lien or charge, either upon real or upon personal property, whether then owned by the assignor or contractor or not, or if personal property, whether it is then in esse or not, it attaches in equity as a lien or charge upon the particular property, as soon as the assignor or contractor acquires a title thereto, against the latter and all persons asserting a claim thereto under him.'"

There are many subsequent cases by our courts reaffirming this doctrine, including McDavid v. Phillips, 100 Tex. 73, 94 S. W. 1131, so strongly relied upon by the machinery companies here, and none, so far as our advices go, challenging it. See, also, Barron v. Bank (Tex. Civ. App.) 138 S. W. 142; Perkins v. Alexander (Tex. Civ. App.) 209 S. W. 789; Sanger v. Hunsucker (Tex. Civ. App.) 212 S. W. 514; Houssels v. Coe & Hampton (Tex. Civ. App.) 159 S. W. 864; Harless v. Jester (Tex. Civ. App.) 97 S. W. 138; Matthews v. Melasky (Tex. Civ. App.) 240 S. W. 641.

That the circumstances attending the transaction represented by this mortgage from Barrow to the bank were such that the court below, from the evidence adverted to as being before it, could "identify the particular property upon which the lien was intended to be created," that is, the rice crop to be grown in 1921 on the same farm he was cultivating in 1920, to quote the additional requirement laid down by Judge Denman in this Richardson Case, seems easily demonstrable. As before indicated, in aid of the recitals in the instrument, the uncontroverted proof was that Barrow individually owned part of the land, that the rest of it belonged to the Barrow estate, and that the machinery companies knew where and what it was, having also seen the rice crops he was raising upon it for both years before acquiring their liens. Knowing further, both from the record and actually, that he had given the bank this mortgage in 1920 to secure his indebtedness, and having outside advices to the effect that he had during both years cultivated but one farm in the county, it follows that, had they but examined the original instrument on file in the clerk's office in the spring of 1921 when they went there to find out whether there were any mortgages ahead of them for that year, of which the law charged them with notice, instead of merely running down the file register, they would have at once ascertained that the bank was claiming a mortgage on Barrow's crop of rice for 1921. The situs of the land involved having been definitely established by parol, as well as being at all times within the direct knowledge of these subsequent lienors, the terms of the 1920 mortgage to the bank contained all else that was necessary.

On this subject it is said in 11 Corpus Juris, p. 468:

"The description of a crop is sufficient if it be such that a prudent, disinterested person, aided and directed by such inquiries as the instrument itself suggests, is able to identify the property."

To the same effect are the 3 Texas cases last above cited.

In the recent case of Houston National Exchange Bank v. Osceola Irrigating Co., also, decided by this court and reported in 261 S. W. p. 561 et sequentia, this question is discussed and determined in the same way. As that opinion clearly differentiates the class of cases supporting the position of plaintiffs in error here from those that we think must rule this one, it is deemed unnecessary to herein further review them.

It follows from these conclusions that the trial court's judgment should be in all things affirmed; that order has been entered.

Affirmed.