### SIMON et al. v. STATE MUT. LIFE ASSUR. CO.
### No. 12552.

Court of Civil Appeals of Texas. Dallas.

Feb. 11, 1939.

Rehearing Denied March 11, 1939.

Slay & Simon, of Fort Worth, for appellants.

Hamilton, Lipscomb, Wood & Swift, of Dallas, for appellees.

YOUNG, Justice.

The only controversy involved in this appeal is priority of right to certain impounded money rentals accruing from mortgaged realty, after suit, judgment es-

tablishing debt and foreclosure, a sale thereunder, with deficiency remaining; the claims being asserted by the mortgagee on one hand, the mortgagors and their assigns on the other. Suit was instituted in a Dallas County District Court February 14, 1935, by the State Mutual Life Assurance Company hereinafter referred to as plaintiff, against U. M. Simon, his wife, the partnership of Butcher & Sweeney, defendants, and others not necessary to here mention. In said petition it was alleged that the Simons were indebted to plaintiff on a number of notes executed ·by them and secured by their deed of trust on certain real property situated in Ft. Worth; that Butcher & Sweeney and the other defendants were asserting some character of claims to the property or interest therein, which, if existing, were inferior to the claims of plaintiff. The averments further were that on July 1, 1932, the Simons assigned and conveyed to plaintiff, as additional security for the payment of the notes, all rents and revenues to be derived from the mortgaged realty until the indebtedness sued on should be paid in full; that the property was occupied at the time of suit by the Western Olds Company (a defendant) and that under said assignment, plaintiff was entitled to have the rentals due by said tenant paid into the registry of the Court, seeking judgment for debt against the Simons, foreclosure of its lien as to all defendants; and for injunctive relief against the Western Olds Company, restraining the latter firm from paying over to defendants, Mr. and Mrs. Simon, any rents due or to accrue from the mortgaged property and a deposit of such rentals into court pending a trial.

Defendants, U. M. Simon and wife, answered on March 16, 1935, with general demurrer and denial, specifically pleading a previous discharge in bankruptcy of Mr. Simon and coverture of Mrs. Simon; the pleadings of Butcher & Sweeney mainly asserting a cross action in this: That as building contractors in May or June, 1934, under agreement with the Simons, they had made certain repairs that were necessary to put the mortgaged premises in condition for occupancy by the Western Olds Company, the balance due for such repairs being $848.30; claiming an assignment by Mr. and Mrs. Simon of rents to such amount and a consequent equitable lien on the rent property to accrue, superior to the lien claims of plaintiff.

About a month after the filing of the above petition, plaintiff, Mr. and Mrs. Simon and the Western Olds Company, made the following agreement in writing as to said rentals: "It is stipulated and agreed that the Western Olds Company, the tenant in the building at the corner of Thirteenth and Taylor Streets in the City of Ft. Worth, being the property involved in the foreclosure suit of the State Mutual Life Assurance Company vs Hattie Simon, et al No. 13768–C, in the 68th Judicial District Court of Dallas County, Texas shall pay to the Dallas Bank & Trust Company, of Dallas Texas the rents on said building, less the usual five per cent commission for collection, same to be held by said bank until the final determination of the above mentioned suit, and then to be paid out by said bank to the parties entitled to the same according to the final decree therein. March 15, 1935."

In June, 1937, after a trial to the court, the cross action of Butcher & Sweeney for priority in and to the above mentioned impounded rentals was denied, and judgment rendered establishing plaintiff's debt against Mr. and Mrs. Simon in the sum of $31,348.04, interest and costs, with foreclosure of plaintiff's deed of trust lien on the property involved against all defendants; further providing that the rent money, in the Dallas National Bank under said agreement, be applied first, to the satisfaction of any deficiency remaining on the established debt after sale under foreclosure; second, the balance, if any, to be paid defendants Butcher & Sweeney to the extent of their claim with interest, the remainder to defendant Hattie Simon. No personal judgment was rendered as to the Simons; and on this appeal no complaint is made of the judgment, except to that part of the trial court's final decree adjudging plaintiff's right to the impounded rental funds in the bank as being superior to the rights of defendants therein ($848.40, with interest, to Butcher & Sweeney, the balance to Hattie Simon).

After filing of suit, plaintiff paid city, county and state taxes against the realty in question of $2,128.46 for the years 1932, 1933 and 1934. Upon request of defendants, findings of fact and conclusions of law were made by the trial court, which findings are fairly supported by the evidence adduced. One of these findings was to the effect that plaintiff applied for the injunction against the Western Olds

Company to restrain said tenant from paying the rents to defendants Hattie and U. M. Simon; and that to prevent the issuance of an injunction and application for a receiver, the above quoted stipulation relative to impounding said rentals was entered into. It should be stated that the Dallas Bank & Trust Company, mentioned in this agreement, was the original payee in the deed of trust notes, plaintiff being assignee thereof; and that the assignment of rents on July 1, 1932, was a part of the original loan transaction between the parties. This assignment recited that the rents and revenues to be derived from the realty during the term of the loan should be collected by the Dallas Bank & Trust Company, or any other holder of the notes representing said loan, and applied by such holder to the retirement of the loans as same matured and became payable, including taxes or other items as provided in the mortgage; the assignment being given as further and additional security for the loan and upon the same consideration.

Appellants' main contentions are (1) that the above pledge of rentals, being nearly one and one-half years prior to the tenancy of the Western Olds Company, the latter company and its lease not being in existence or in contemplation of the parties on July 1, 1932, rendered void any attempt to mortgage or assign such non-existent rentals; (2) since the plaintiff as mortgagee did not divest possession of the premises out of the mortgagor, Hattie Simon, during the foreclosure proceedings, said mortgagor retaining such possession until sale of the property after judgment, the plaintiff was not entitled to the rents deposited with the bank during the litigation, even though expressly pledged as security; (3) under the judgment, no personal liability was fixed against the Simons, and the foreclosure, relating only to the real estate covered by the mortgage, the court was not authorized to order any deficiency to be paid out of the rental fund in the bank; it appearing that such fund was the personal property of Hattie Simon, separate and distinct from the mortgaged realty; (4) the bank holding the funds, not being a party to the lawsuit, there was no power or authority in the court to direct the payment of any rental funds in its hands.

At the time the rental assignment was made the property was occupied by a Federal agency, but was later vacated and remained so for some time prior to the Western Olds Company's tenancy in May or June, 1934. Following are recitals in this instrument: "We (mortgagors) do also hereby authorize and instruct the present tenant in said property and any other tenant or tenants which may occupy the same, or any part thereof, during the term of this lease, to pay the rents to the said Dallas Bank & Trust Company, or to its assigns, in accordance with the terms of this instrument"; the mortgagors thereby assigning "all the rents and revenues to be derived from said property during the term of said loan and until said loan has been paid in full". It is clear from a reading of the rental assignment as a whole, from which the excerpts just quoted are taken, that it was the intention of the Simons to assign to the holder of the notes all rents and revenues to be derived from the mortgaged premises during the term of the loan, and that it was further within the contemplation of the parties that other tenants might subsequently occupy the building with accruing rents likewise subject to the assignment. "It is settled law that a valid mortgage may be had upon after-acquired property, but the law requires that it shall be established by certain well-defined rules. One of these rules is that it must be shown that at the date the mortgage was executed the parties thereto 'anticipated the acquisition by the grantor of the very property upon which the lien is sought to be fixed and foreclosed, and intended that it should be subject thereto.' Richardson v. Washington, 88 Tex. 339, 31 S.W. 614, 617; Prator v. Washington, Tex.Civ.App., 277 S.W. 704." Senterfitt v. Bradley, Tex.Civ.App., 60 S.W.2d 815, 816. Here all the loan transaction related to existing property under lease, against which was being placed a debt of fixed future duration; hence rents subsequently earned during the period were sufficiently definite in description and of such existence potentially as to become a valid subject for additional security if and when the same accrued. That it was the intention of the parties in the beginning to, so regard these funds as after-acquired property is manifest from the face of the loan instruments; and the testimony of Mr. Simon that the acquisition of the particular Western Olds rentals was not contemplated by him, must be disregarded as an attempt to vary the

intent of the initial loan instruments and assignment. South Texas Implement & Mach. Co. v. Anahuac Canal Co., Tex. Com.App., 280 S.W. 521. The subsequent agreement of March 15, 1935, is in entire consonance with the original intention of the mortgagors in this respect; and to all of these writings between the mortgagors and mortgagee, the following equitable doctrine quoted by Judge Denman in Richardson v. Washington, supra, is peculiarly applicable [88 Tex. 339, 31 S.W. 617]: "That wherever the parties, by their contract, intended to create a positive lien or charge, either upon real or upon personal property, whether then owned by the assignor or contractor or not, or, if personal property, whether it is then in esse or not, it attaches in equity as a lien or charge upon the particular property as soon as the assignor or contractor acquires a title thereto, against the latter and all persons asserting a claim thereto under him." See Christopher v. Davis, 284 S.W. 253, where Judge Looney, speaking for this Court, applied the above principle to assigned interests having potential existence. Of the cases cited by defendants in this connection, First National Bank of Houston v. Campbell, Tex.Civ.App., 193 S.W. 197, and Globe Indem. Co. v. West Texas Lbr. Co., Tex.Civ.App., 34 S.W. 2d 896, we think both decisions are quite dissimilar in facts and therefore different in the law to be applied.

▮▮ Appellants further argue that the impounded rentals accrued and were collected by the Bank at a time when Hattie Simon was in possession of the mortgaged premises and the mortgagee was not entitled to the rents and profits even though expressly pledged as security. Answering this proposition, it is evident that the present loan or debt was secured by two items or property, (1) the real estate, (2) the rentals to be derived therefrom until the loan was paid. The indebtedness being in default, suit was filed for a foreclosure of liens, and although defendants retained possession of the realty until after sale under the judgment, yet the voluntary stipulations already mentioned just as effectively divested Mr. and Mrs. Simon of the rents impounded as could have been obtained through injunction or receivership proceedings. We think the finding of the trial court that such stipulation was entered into "to prevent the issuance of an injunction and the appointment of a receiver", in fact, substituted the agreement for the ancillary relief sought and, upon judgment for the lienor, foreclosed against defendants any claim to the rents so collected and impounded. In this state of the record, therefore, the following well recognized principle of law becomes applicable in favor of Plaintiff Company: "* * * mortgages also frequently contain clauses assigning the rents to the mortgagee. Unless acted upon by the parties such provisions do not become effective, however, until the mortgagee actually obtains possession, or until he asserts his rights by securing the appointment of a receiver or impounding rents and profits pending foreclosure, or taking some action equivalent thereto." 41 C.J. p. 629, Sec. 605. In McGeorge v. Henrie, Tex.Civ.App., 94 S.W.2d 761, cited by appellant, the rents were deposited in bank by the tenant simply on request of the note holder, consequently no such legal steps were taken to divest rentals out of the mortgagor as appears here; hence the case last cited is clearly distinguishable, supporting rather than infringing upon the general rule.

▮ Appellants' remaining propositions can be discussed briefly. Although Mrs. Simon was adjudged not personally liable for the debt evidenced by the deed of trust notes, yet the court concluded as a matter of law that a prior and additional lien had attached to the rents in case of deficiency, after the real estate had been foreclosed upon. A valid lien existed by virtue of the assignment, irrespective of coverture. 23 Tex.Jur. (Husband and Wife), Sec. 176. The judgment below went no further than to foreclose or apply this security—an adjudication entirely consistent with all previous dealings between the parties, before or after suit. Appellants' proposition No. 4 is considered and overruled. The Bank was a stakeholder by agreement. Defendants are not in position to complain of a situation invited and acquiesced in by them; nor do they show any injurious effect because of the Bank's informal relation to the entire proceedings. Finding no error in the matters assigned, this cause must be affirmed.

Affirmed.