## L. C. PAINE FREER

*v.*

## MARY A. LAKE.

*Filed at Ottawa January 25, 1886.*

1. MORTGAGE—*whether the relation of mortgagor and mortgagee exists—what will operate to extinguish the mortgage debt.* A debt or obligation of some kind is an essential element in a transaction to create the relation of mortgagor and mortgagee.

2. The purchaser of real estate gave notes for the purchase money, secured by mortgage. He subsequently conveyed the mortgaged premises by deed containing a clause obligating the grantee to pay the mortgage debt. Afterward the latter conveyed the property to the holder of the unpaid notes, under a promise of the latter to give the party so conveying to him whatever could be made out of the property in the next three years, above the debt, interest, taxes, insurance and repairs: *Held,* that the mortgage debt was thereby extinguished, and the relation of mortgagor and mortgagee no longer existed.

3. TRUST—*where a conveyance creates the grantee a special trustee.* The holder of notes secured by mortgage on real estate, required of the owner thereof, who had assumed payment of the mortgage debt, an absolute conveyance of the property, and sent a letter to the debtor, inclosing the deed, in which letter he promised that if anything could be made out of the property during the next three years, more than the debt, interest, taxes, insurance and repairs, to give the debtor the benefit of it. The latter, relying on this promise, executed the deed and gave possession. In a short time after, the grantee sold the property for the amount of his debt and repairs made, after which the property advanced in value, so that if it had been held the three years there would have been a net profit to the debtor of $1768: *Held,* that construing the deed and letter together as showing the contract of the parties, the relation of trustee and *cestui que trust* was created, and that the grantee took the property, not as absolute owner, but as a trustee, clothed with duties in respect thereto that a court of equity would enforce, and that he was liable to the grantor for the sum he would have received if the contract had been performed.

4. A special trust is where special and peculiar duties are pointed out to be performed by the trustee. In such case he is not a mere passive agent, but has active duties to perform, as, where an estate is conveyed to him, to sell, and from the proceeds pay the debts of the grantor.

5. CONTRACT—*construing a letter and a deed as parts of a single transaction.* The holder of a debt secured by a mortgage on property, sent a deed therefor to the debtor owner, for execution, with a letter of the same date, promising therein to give the debtor all that could be made out of the property within three years, more than what he paid therefor, with the interest, taxes, etc.: *Held,* that the letter and deed were but parts of the same transaction, and were to be considered together as one contract, showing the rights of the parties.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

Mr. FRANK J. CRAWFORD, for the appellant:

The transaction between the parties which took place May 27, 1878, did not constitute a mortgage, nor was it intended to be a mortgage by either party. The presumption is that a deed absolute on its face is not a mortgage, and it will not be held a mortgage unless it clearly appears to have been so intended. The proof must be clear, satisfactory and con-

vincing. Jones on Mortgages, 335; *Bartling* v. *Brasuhn*, 102 Ill. 441; *Pitts* v. *Cable*, 44 id. 103; *Wilson* v. *McDowell*, 78 id. 517; *Hancock* v. *Harper*, 86 id. 445; *Knowles* v. *Knowles*, id. 1; *Sharp* v. *Smitherman*, 85 id. 153; *Clark* v. *Finlon*, 90 id. 245; *Maher* v. *Farwell*, 97 id. 56.

The facts and circumstances attending the transaction, when properly considered, do not justify the conclusion that the letter of May 27, 1878, amounted to a declaration of trust, or a defeasance of the quitclaim deed, or conferred on the appellee any such rights as found by the court.

Messrs. H. T. & L. Helm, for the appellee:

The quitclaim deed was not an absolute conveyance of all interest in the property. Under it, Freer took and held the property on trust, after the payment of his debt and expenses, to render the overplus to Mrs. Lake,—precisely the terms of an ordinary trust deed. *Austin* v. *Austin*, 6 Bradw. 49; *Woodruff* v. *Robb*, 19 Ohio, 212; *Schultz* v. *Houfes*, 96 Ill. 341; *Life Ins. Co.* v. *White*, 106 id. 67; *Gillis* v. *Martin*, 2 Dev. Eq. 470; *Ogden* v. *Grant*, 6 Dana, 473; *Cooper* v. *Whitney*, 3 Hill, 96.

The extinguishment of the personal liability of the debtor does not affect the question of trust or mortgage. *Holmes* v. *Grant*, 8 Paige, 251; *Bacon* v. *Brown*, 19 Conn. 34; *Brown* v. *Dewey*, 1 Sandf. Ch. 57; *Wharf* v. *Howell*, 5 Binney, 499; *Howe* v. *Keteltas*, 46 N. Y. 605; *Hughes* v. *Sheaf*, 19 Iowa, 342; *Kenyon* v. *Kelsey*, 10 id. 443; *Nugent* v. *Riley*, 1 Metc. 117; *Scott* v. *McFarland*, 13 Mass. 309; *Rice* v. *Rice*, 4 Pick. 349.

Here is a trust voluntarily assumed for a valuable consideration paid. The letter sent to Mrs. Lake was the inducement to her executing the deed. It held out hopes to her of an interest in or result from the property, notwithstanding her deed. This was fatal to its character as an absolute conveyance. *Morris* v. *Nixon*, 1 How. 118.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by Mary A. Lake, in the Superior Court of Cook county, against L. C. Paine Freer, to redeem certain premises in Chicago from a mortgage, and in the event that the property had been transferred so that a reconveyance could not be made, that then an alleged trust may be enforced, and that Freer may be required to account to the complainant for the rents and increased value of the property from May 27, 1878, until May 27, 1881.

The material facts, as appear from the pleadings and evidence, are as follows: In 1871, one Gilbert, being indebted to Mugridge in the sum of $4800 purchase money for the premises in dispute, gave him five promissory notes—four of $1000 each, payable, respectively, May 21, 1874, 1875, 1876 and 1877, and the fifth for $800, payable May 21, 1878, all with interest at eight per cent. Gilbert also executed a deed of trust on the premises, to secure the notes. After the deed of trust was recorded, Gilbert conveyed the premises to Brooks, and he conveyed to Brown, and Brown conveyed to the complainant, Mary A. Lake. Each deed contained a clause obligating the grantee to pay the Gilbert trust deed. Prior to 1874, Freer had purchased the last four of the notes and deed of trust, the first one having been previously paid, and a short time before the last note became due, Freer, and D. J. Lake, complainant's husband, entered into negotiations in regard to the payment of the indebtedness, which resulted in an arrangement under which Mary A. Lake and her husband conveyed the premises to Freer by an absolute deed of conveyance. The deed was prepared by Freer and sent to the Lakes for execution, and with the deed the following letter:

"CHICAGO, *May 27, 1878.*

"*Mr. and Mrs. D. J. Lake*—I have drafted a deed of the Gilbert property in conformity with a conversation had to-day with Mr. Lake, which you will find herewith enclosed. I am

sorry to be troubled with the property, or to have you lose anything by it. There are two taxes against it—the taxes of 1878, and an old city tax. These taxes I will pay, and all other taxes, and I repeat what I said before to Mr. Lake: I shall consider myself honorably bound, if anything can be made out of the property during the next three years, more than the interest, taxes, insurance and repairs, to give Mrs. Lake the benefit of it. This has been my uniform course in similar cases. In the meantime I shall expect the rent from the first of June, and your title papers and abstracts of title. Please execute the deed and send to me. First, fill the christian name of Mrs. Lake; second, your place of residence, and acknowledge. "Yours truly, L. C. P. FREER.

"P. S. I could collect my debt without difficulty, of the makers and guarantors of the notes, but I do not wish to give any one more than the inevitable trouble these hard times.

L. C. P. F."

Upon receipt of this letter the deed was executed and returned to Freer, the title papers and abstract were delivered to him, and the possession of the property surrendered on the first day of June. At the time of this arrangement there was due on the trust deed and notes about the sum of $3400, and on the first day of July, 1878, Freer sold the property to Seth Gage for $3500, which was about the sum the property had cost, Freer having expended something in repairs after the property came into his possession. It also appears from the evidence, that during the three years next succeeding May 27, 1878, the property increased in value, so that if it had been held by Freer and sold at the expiration of the three years, there would have been a net profit to complainant of $1768.03, for which amount a decree was rendered in the Superior Court.

Much time has been consumed in the argument to prove that the transaction between the complainant and Freer was

a mortgage, and that the parties should be governed by those principles which control mortgagor and mortgagee, in the decision of the case. . We have given the subject a careful consideration, but, after the execution and delivery of the deed, we are not able to concur in the view that the relation of mortgagor and mortgagee still continued to exist between the parties. Upon the delivery of the deed, the mortgage debt which the complainant had assumed, and which she had agreed to pay, and which was a lien upon her property, was extinguished, and she was released from its payment. There was, after the delivery of the deed, no mortgage debt or obligation in existence, and under the rule announced in *Rue* v. *Dole*, 107 Ill. 275, there was nothing for the mortgage to operate upon. A debt, or mortgage obligation of some character, is an essential element in a transaction to create the relation of mortgagor and mortgagee, and it is plain that no debt or mortgage obligation existed under the facts presented by this record. What was the nature of the transaction and the relation of the parties, after the delivery of the deed? The letter of Freer, written to the complainant, and the deed she executed, bearing the same date, are a part of the same transaction, and constitute one contract. The two writings are to be considered together as one contract. By the terms of the letter, Freer required an absolute deed of the property, the title papers, the abstract of title, and possession of the property on the first day of June, in consideration for which he agreed to hold the property for three years, and all that could be made out of the property, more than the interest on what he had paid therefor, taxes, insurance and repairs, he would give to Mrs. Lake. The deed was doubtless executed and delivered upon the faith of the promise contained in the letter, and it can not be justly said that there was no obligation resting on Freer, after he received the deed, except to cancel the debt that he held on the property. The letter was a proposition, in writing, addressed to Mrs. Lake, containing

what had been agreed upon verbally by the parties. This proposition was accepted by her by the execution and delivery of the deed, and when thus accepted, the letter and deed became a binding contract upon the parties. Under it, Freer bound himself, in the event that the value of the property advanced within three years, to sell, retain certain specified amounts, and pay over the surplus to Mrs. Lake. Here was a trust. It was not a sale, as Freer was not to have the absolute, unconditional ownership of the property, but special and peculiar duties were pointed out, by the terms of the contract, to be performed by Freer. He thus became a trustee, clothed with duties in respect to property which a court of equity require to be enforced. Perry on Trusts, (sec. 18,) in discussing the different kinds of trusts, says: "A special trust is where special and particular duties are pointed out to be performed by the trustee. In such cases he is not a mere passive agent, but he has active duties to perform, as, when an estate is given to a person to sell, and from the proceeds to pay the debts of the seller." *Cooper* v. *Whitney*, 3 Hill, 96, is a case in point. It is there held, where a deed of lands is executed, and a covenant made between the parties at the same time, declaring that the grantee shall sell the lands to pay certain of the grantor's debts, and return to him the surplus, but containing no reservation of the right to redeem, the transaction will be regarded as constituting a conveyance in trust. See, also, *Ogden* v. *Grant*, 6 Dana, 473, where the same doctrine is announced. Other authorities of like character might be cited, but we do not deem it necessary to review or cite other cases.

We are satisfied that the letter of Freer, and the deed, taken and construed together, as they must be, make a contract which must control the rights of the parties, and that the contract, when fairly construed, established a trust. Under the contract, appellee, as she had the right to do, relied upon appellant to hold the property, and not force it upon the

market, for the time specified in his letter, which led to the execution of the deed. This he failed to do, and it is right that he should pay appellee whatever amount she lost in consequence of his failure to perform his contract. It may be that appellant sold the property, at the time he did, under a mistaken view of his legal obligation to appellee under their contract, but that fact does not affect his liability.

We regard the decision of the Appellate Court correct, and it will have to be affirmed.

*Judgment affirmed.*