Statement.

## Richmond.

### Winder v. Nock and Others.

January 18, 1906.

Absent, Cardwell, J.

1. TRUSTS AND TRUSTEES—*Duty of Trustees—Good Faith—Prudence—Case in Judgment.*—No liability attaches to a trustee who acts in good faith, within the scope of his powers and with the care of an ordinarily prudent man. In the case in judgment the whole matter of finding a purchaser and making a sale of a farm in which, or in the proceeds of the sale of which, appellant had an interest, was left exclusively in the hands of N., who had bought and paid the purchase price for the farm, and held the legal title thereto. The gravamen of the complaint against him is that the farm was sold for an inadequate price, and that this constituted a breach of trust, and was in fraud of appellant's rights. Upon an examination of the evidence, it is held that while N. did occupy a relation of trust to the complainant, he acted within the scope of his powers in making the sale, that the price obtained was fair and reasonable, that there was no direct proof of fraud on his part, and that appellant suffered no injury by such sale, and hence cannot recover.

Appeal from a decree in chancery of the Circuit Court of Northampton county. Decree in favor of defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Wise & Watkins* and *J. S. Parsons,* for the appellant.

*Stewart K. Powell, Benj. Gunter, N. B. Westcott, Ashby & Read* and *E. J. Spady,* for the appellees.

HARRISON, J., delivered the opinion of the court.

Mrs. John L. Winder, the wife of appellant, and Samuel P. Fisher, her son, by a former marriage, who together owned a farm in Northampton county containing 171-½ acres, sold and conveyed the same in May, 1902, to the appellee, L. Floyd Nock. For the part owned by Fisher, the appellee paid $1,000 in cash, and for the part owned by Mrs. Winder he paid the sum of $3,000 in cash. Contemporaneously with the deed from Mrs. Winder, the appellee and her husband, the appellant, made the following contract:

"This contract and agreement, made this 10th day of May, 1902, between L. Floyd Nock, of the first part, and John L. Winder, of the second part:

"Whereas, the said L. Floyd Nock did on the 5th day of May, 1902, purchase from Samuel P. Fisher and wife all of the said Samuel P.'s right, title, interest and estate in and to a tract of 85-¾ acres, more or less, situated near Read's Wharf, Northampton county, Va., for the sum of one thousand dollars ($1,-000.00), and has this day purchased from Mrs. Rose A. Winder, wife of said John L. Winder (her husband), her tract of 85-¾ acres, more or less, adjoining that purchased from the said Samuel P. Fisher and wife, and also her contingent interest in the said Samuel P. Fisher tract, together for the sum of three thousand dollars ($3,000.00), to her in hand paid this day. And whereas the said sums of $1,000.00 and $3,-000.00, respectively, were paid by the said L. Floyd Nock and the deeds for the said property were made to him, with the understanding and agreement between the said Nock and the said Winder that the said Winder is to be joint and equal owner in the proceeds of sale with the said Nock, subject to the aforesaid debt of four thousand dollars ($4,000.00), the one-half of which amount, with interest on same from this day, is to be paid by said Winder to said Nock. And, whereas, the said Nock and said Winder are to share equally the rents and profits

of said land, and the said Winder is to look after the property and collect the rents for which he is to receive a commission of ten (10) *per cent.* out of the gross amounts of rents received by him. And, whereas, the said Nock is to sell the property as soon as practicable for the best price possible, the same having been purchased for said purpose and for which, and making the financial arrangements he is to receive a commission of five (5) *per cent.* on the gross amount of sales, which as well as the cost of advertising is to be deducted before any division between said Nock and said Winder, and, whereas, the said Winder is to have the premises whitewashed and such other improvements made as he and said Nock may agree upon with a view of making the said premises attractive to a purchaser, and the labor and material is to be paid for by them jointly. Now this agreement witnesseth: That the said Nock and said Winder do each hereby bind himself to a faithful performance of the stipulations and agreements herein contained to be done and performed by them severally.

"Witness our hands and seals, this 10th day of May, 1902.

"L. FLOYD NOCK, (Seal).

"JOHN L. WINDER. (Seal).

"Witness:

J. H. NICHOLSON.

On the 1st day of July, 1902, the appellee, L. Floyd Nock, and his wife, sold and conveyed this farm to Francis H. Dryden, of Worcester county, Md., in consideration of $4,300 cash. Contemporaneously with this deed the grantee therein executed a deed of trust to Nock, as trustee, securing $4,000 to certain parties who had loaned the same to Dryden to enable him to pay the $4,300 in cash to Nock for the farm.

In February, 1903, the bill in this cause was filed by John L. Winder, alleging that under the contract of May 10, 1902, he and the appellee, Nock, were jointly interested in the purchase that day made of the Fisher farm, and that appellee held the legal title thereto in trust for himself and appellant; that

Dryden, the purchaser had actual notice of the contract between himself and appellee, and was a mere pretended purchaser; that the sale by Nock was not *bona fide,* had been made without sufficient advertisement, at an inadequate price, and without the knowledge or consent of appellant, for the purpose of defrauding him of his just rights in the premises; and that Dryden participated in this purpose and intent. The prayer of the bill is that the deed from Nock and wife to Dryden, and the deed of trust from Dryden to Nock be set aside and annulled, and that Nock be required to account for the $4,300 of purchase money received by him, and to pay the same to the beneficiaries under the deed of trust; that the farm be sold and the proceeds divided between Nock and himself, and that Nock and Dryden be required to account for rents.

The defendants, Nock and Dryden, filed separate answers to the bill, in which each denies every material allegation of the bill, especially denying that there was any collusion or fraudulent purpose connected with the sale, and declaring that it was in all respects *bona fide,* and for a full and adequate price.

From the decree of the Circuit Court dismissing the bill, this appeal has been taken; it being insisted that the sale by Nock to Dryden should be set aside upon the ground of breach of trust and fraud.

The claim of appellant, that Nock held the legal title to the farm in trust for the joint benefit of himself and appellant is most earnestly contested, it being insisted that, under the terms of the contract of May 10, 1902, appellant had no interest in the farm itself, and that his only interest was in the proceeds of sale in excess of the $4,000 paid by Nock for the farm, and the cost of selling.

The contract is not clear upon this point, but in the view we take of the case it is immaterial whether appellant owned a joint interest in the farm, or only an equal interest with appellant in the proceeds of sale in excess of cost, for in either case Nock occupied the relation of trustee to Winder, and was bound to act in good faith in making the sale.

The settled rule is that only the care of an ordinarily prudent business man is required of a trustee.

In Minor's Institutes, the learned author says: "It is indeed observable that whenever a fiduciary is called to account and a liability is sought to be fixed upon him, the enquiry must ever be, whether, in the transaction in question, he acted within the scope of his powers, with good faith and ordinary prudence. . . . This is, indeed, nothing more than the application of an old principle, which has long governed trusts of all kinds, namely, that nothing more should be required of a trustee than to act in good faith, and with the same prudence and discretion that a prudent man is wont to exercise in the management of his own affairs." 4 Minor's Inst. (3rd Ed.), 1482, 1495-6, citing numerous Virginia cases, and other authorities.

It is to be observed that the same contract which is relied on as creating this trust relation, reposed in Nock unrestrained power "to sell the property as soon as practicable for the best price possible, the same having been purchased for said purpose." There is no limitation as to the time of selling, except that it shall be sold *as soon as practicable*. There is no contract requirement as to the extent that the property should be advertised, nor is there any suggestion that appellant was to be notified or consulted with respect to the sale. The whole matter of finding a purchaser and making a sale was left exclusively in the hands of Nock. The gravamen of appellants complaint is that the farm was sold for an inadequate price, and that this constituted a breach of trust and was in fraud of appellant's rights. It is clear that unless this charge is well founded appellant has not been injured, and therefore cannot justly complain.

The evidence of value, as in most cases of this nature, is conflicting but a careful consideration of all the testimony leads to the conclusion that its decided weight is in favor of holding that the price obtained was the fair value of the property at the time the sale was made. Eleven witnesses on behalf of the

appellant fix the value of the farm at from $5,500 to $8,000. With much the larger proportion of these witnesses the estimate of value ranges from seven to eight thousand dollars. Sixteen witnesses, introduced on behalf of appellees, fix the value of the farm at from $3,000 to $5,000. Nearly all of these witnesses estimate the value of the farm at from $3,000 to $4,300. A careful scrutiny of the evidence shows very clearly that the witnesses who practically concur in the view that the price at which the farm was sold by the appellee, Nock, was its fair and reasonable value, have been longest and best acquainted with the land, and are better informed as to its value than those who speak on behalf of appellant. The record further shows that during the years from 1890 to 1902, inclusive, the latter being the year of the sale, the assessed value of the farm for purposes of taxation varied from $1,990 to $2,205. So that the farm was sold for about twice its assessed value. It is not likely that this land was assessed at one-fourth of its real value, which would be the case if the estimate of value placed upon it by appellant's witnesses was reliable.

Upon the whole case, we are of opinion that the appellee, Nock, acted within the scope of his powers in making the sale complained of; that $4,300 was the fair and reasonable value of the farm in question; and that the appellant suffered no injury by its sale at that price. There is no direct proof in the record of any fraudulent intent on the part of the appellees, and in view of the conclusion that the appellant has not been prejudiced by the sale, we deem it unnecessary to comment upon the suggested suspicious circumstances attending the sale, for if the view of those circumstances taken by the appellant could be sustained, it would not affect the result.

For these reasons the decree complained of must be affirmed.

*Affirmed.*