**CHRISTOPHER et al. v. DAVIS et al.**
**(No. 9590.)**

(Court of Civil Appeals of Texas. Dallas. April 10, 1926. Rehearing Denied May 22, 1926.)

**I. Frauds, statute of** &wkey;106(2).

Writing *held* sufficient memorandum, if assignment of net rentals to accrue under lease for years be within purview of statute.

**2. Frauds, statute of** &wkey;139(1).

Verbal assignment is removed from operation of statute by assignees' performance of their obligations thereunder, payment for benefit of assignor, and his acceptance of its benefits.

**3. Frauds, statute of** &wkey;152(1).

The defense of the statute must be pleaded to be available.

**4. Landlord and tenant** &wkey;57(1)**—Assignment by lessee of interest in net rentals to accrue from leases for years held not void for uncertainty and contingency of interest.**

Assignments by lessee of half interest in net rentals to accrue from leases for terms of years, lessee binding himself and successors to protect leases from forfeiture, and to sublet and collect rentals, *held* not void for uncertainty and contingency of interests; they being expectancies or possibilities having potential existence.

**5. Trusts** &wkey;35(1)**—If intention appears that property be held and dealt with for benefit of another, equity affixes to it character of trust.**

Without regard to particular form of words, if intention appears that property shall be held

and dealt with for benefit of another, equity will affix to it the character of a trust.

**6. Trusts ☞20.**

Trust is equally valid whether creator constitutes himself or another trustee.

**7. Trusts ☞10.**

All classes of property or assignable interests therein may be impressed with a trust.

**8. Trusts ☞135.**

Assumed duty or obligation to receive and pay to another rents and profits from lands is an active trust.

**9. Trusts ☞10—Leaseholds, though defeasible estates, are susceptible of being impressed with a trust.**

Leaseholds, though defeasible estates, constituting property, are susceptible of being impressed with a trust, as they constitute property, and may be assigned and dealt with accordingly.

**10. Trusts ☞348—Purchasers under assignment for creditors of trustee with notice of the trust hold the property subject to the trust.**

Persons taking the interest of a lessee by purchase under his assignment for creditors, with notice of trust relations between him and one to whom he had assigned an interest in the net rentals to accrue from the lease, with covenant to preserve, hold, and manage the leasehold estate for the joint benefit of the two, hold subject to the trust.

Appeal from District Court, Dallas County; T. A. Work, Judge.

Suit by J. O. Davis and another against W. S. Christopher and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Thomas, Frank, Milam & Touchstone, of Dallas, for appellants.

Read, Lawrance & Bates, and Thompson, Knight, Baker & Harris, all of Dallas, for appellees.

LOONEY, J. This suit was brought to establish the right of the appellees to an half interest in net rentals arising from two leaseholds.

On April 23, 1920, C. A. Keating, owner, leased, with the privilege of subletting, to T. J. Britton for a period of 15 years from November 1, 1920, certain real property in Dallas, the consideration being $12,000 per year, payable $1,000 per month in advance, and, in addition, the lessee agreed to pay all taxes, assessments, water rents, insurance, and all other charges of every kind or nature whatsoever levied or imposed upon or in respect to said premises.

On September 23, 1920, Keating leased to Britton the same property for a period of 84 years, beginning at the expiration of the 15-year lease; the consideration being $14,-000 per year for the first 10 years, $16,000 per year for the next 24 years, and $18,000 per year for the last 50 years of the period, of which amount $10,000, to be deducted from the last rental falling due under the lease, was to be paid to Keating in monthly installments of $1,000 each. The last three matured on, to wit, November 23, 1921, January 23, 1922, and March 23, 1922. The remaining covenants of the contract are substantially the same as those contained in the 15-year lease.

On July 27, 1920, Britton relet the premises to Joseph Collins for the full period of the 15-year lease upon substantially the same terms, conditions, and provisions as those contained in the contract with Keating, with the exception that Collins agreed to pay Britton $16,000 per year for the first 5 years, and $17,000 per year for the next 10 yaers.

Britton defaulted in his obligations to pay the $1,000 installment due November 23, 1921, and was notified by Keating that, unless this payment was made by December 14, 1921, the 84-year lease would be forfeited. On this day, to wit, December 14, 1921, Britton, in order to prevent forfeiture of the lease, sold to the appellees a half interest in the net rentals to be collected from the two leases; the consideration for the sale being $5,-750.

Britton was of the opinion that he could not assign an interest in the 84-year lease before paying Keating the installments of $1,-000 each, due January 23 and March 23, 1922, so, on January 12, 1922, he and appellees entered into a written contract with reference to the 15-year lease substantially as follows:

In paragraphs first and second the acquisition of the 15-year leasehold by Britton from Keating and the reletting of the same to Joseph Collins are recited. Paragraph 3 contains the following, among other things:

"It is therefore agreed by and between the party of the first part (Britton) and party of the second part (Davis and Cave) that for and in consideration of the sum of $3,750 cash paid by party of the second part to party of the first part, the receipt of which is hereby acknowledged and confessed, that the said party of the first part does sell and agree to deliver and pay over to the party of the second part one-half of the net profits that may be earned and received under and by virtue of said lease contract dated the 23rd day of April, 1920, between the said Keating and the said Britton, and the contract dated the 27th day of July, 1920, between the said Britton and the said Collins, or any lease contracts or assignments or subcontracts made thereunder to any other person or persons."

In paragraphs 4 and 5 Britton obligated himself, his heirs and assigns, to faithfully perform, or cause to be performed, all the conditions, terms, and agreements stipulated and contained in the lease contract between himself and Keating and between himself and Collins, stipulating that appellees should

be in nowise bound or obligated for the performance of the terms, conditions, and covenants contained in said lease contracts, or either of them.

In the sixth paragraph it was provided that, if Collins, his heirs or assigns, should fail, refuse, and neglect to faithfully perform any of the covenants contained in the lease contract between himself and Britton, that Britton, his heirs and assigns, would protect the lease, and keep the same in full force and effect, and save and keep appellees harmless from any liability thereunder.

In the seventh paragraph Britton obligated himself to collect all sums of money that may be earned under the lease contract so long as he is in position to do so, without charge to appellees, and to pay over to them one-half of the net profits derived and received from said contracts or any assignment or subcontracts made in connection therewith, providing that, if he should be unable to devote the necessary time and attention personally to the collection of said rents, he would employ a suitable agent to collect the same, the net amount to be divided in two parts, one of which was to be retained by Britton and the other part paid to appellees.

In the eighth paragraph Britton bound himself, his heirs and assigns, to at all times keep appellees furnished with full details and correct information as to the net earnings under and by virtue of the contracts aforesaid, or any assignment or subcontracts made in connection therewith.

In the ninth paragraph it was provided that, in the event the sublease to Collins should be terminated, Britton obligated himself, his heirs or assigns, to re-lease or sublet to some person, persons, or corporation, the said premises for the unexpired portion of the lease contract.

The tenth and eleventh paragraphs are as follows:

"It is expressly understood and agreed between the party of the first part and party of the second part that no assignment of said lease contracts aforesaid is made or intended to be made by party of the first part to party of the second part; that no liability or obligation of any nature or character is assumed or intended to be assumed by party of the second part in said lease contracts aforesaid.

"It is expressly understood and agreed between the party of the first part and party of the second part that no partnership relations are created nor intended to be created by the execution of this contract; that neither the party of the first part nor party of the second part has any authority to in any manner bind the other party thereto as agent or otherwise in any other agreement or contract of any nature or character whatsoever."

The consideration appellees agreed to pay for an undivided half interest in the two leasehold estates, to wit, $5,750, was arbitrarily divided, and $3,750 was recited as the consideration in the assignment of the half interest in net rentals arising from the 15-year lease. The agreement, however, was that appellees would pay Keating $2,000 due by Britton, being the January 23 and March 23, 1922, installments on the 84-year lease, and that the parties would enter into a written contract with reference to the 84-year lease defining their rights and obligations substantially identical, in so far as applicable, with the assignment to the 15-year lease above described.

The memorandum with reference to the 84-year lease was in form of a letter by Britton to appellees, in effect an option to purchase, written contemporaneously with the contract just recited, as follows:

"Messrs. J. O. Davis and J. B. Cave, Dallas, Tex.—Gentlemen: This is to confirm my agreement with you for your right to purchase an undivided one-half interest in and to the net profits to be earned and realized under and by virtue of a lease contract heretofore entered into between C. A. Keating and T. J. Britton, dated the 23d day of September, 1920, said lease contract covering certain lots and improvements thereon at the northeast line of Live Oak and Ervay streets in the city of Dallas, Tex. You are hereby given the exclusive option to purchase a one-half interest in the net profits to be earned under said contract, and said option is to extend to the 15th day of May, 1922. I agree to make the payments specified in said contract on or before May 15, 1922, it being understood that a contract between yourself and the writer is to be drawn and executed by each of the parties, fully setting forth the rights of the respective parties on or before May 15, 1922.

"Please denote your acceptance of this letter of confirmation by signing below in the space marked 'approved.' "

This letter was signed by Britton, and was approved and signed by the appellees.

Appellees afterwards paid Keating the $2,000, the unpaid installments above mentioned, thus perfecting the leasehold estate of Britton in the 84-year lease, and, within the time specified in the memorandum, to wit, May 15, 1922, prepared a written contract defining the obligations and rights of the respective parties with reference to the 84-year lease, substantially identical in terms, as far as applicable, with the 15-year lease contract, and demanded that Britton join in the execution of the same, which he declined to do.

Joseph Collins, the subtenant of Britton under the 15-year lease, was adjudged a bankrupt on December 19, 1921, and the trustee of his estate elected to treat the lease contract with Britton as an asset of the estate, and sold the same for a valuable consideration to the defendant the Chain Store Realty Company.

On May 19, 1923, Britton made an assignment to defendant W. S. Christopher, trustee, for the benefit of creditors, and Christopher, as trustee, on May 25, 1923, assigned a half interest in the two leases to the de-

fendant H. Kramer for a consideration of $20,000. The transfer to Kramer contained the following recitation:

"Said T. J. Britton having heretofore conveyed an undivided half interest in and to both said leases, and it being the intention hereof to convey the undivided half interest in and to both said leases not heretofore conveyed by the said Britton."

On September 25, 1923, Christopher, as trustee, executed an assignment and transfer to the defendant Dallas Trading Company of a one-half interest in the two leases for a consideration of $4,000.

Britton paid appellees one-half of all net rentals of the 15-year leasehold until he executed the assignment for the benefit of creditors above mentioned, and thereafter Kramer paid them half of the net rentals until September, 1923.

Each and all of the appellants dealt with this property with full notice, both actual and constructive, as to the interest and rights of appellees in the 15-year leasehold estate, and with actual notice of their interest and rights under the 84-year leasehold estate.

In this suit appellees sought, among other relief, to establish and quiet their title to an undivided half interest in and to the net rentals arising from the two lease contracts hereinbefore described; to have their rights enforced as a trust impressed on these estates in the hands of appellants; and for an accounting as to net rentals theretofore received by appellants, or either of them, from said estates.

The jury found in response to special issues that at or about the time appellees and Britton executed the option contract they agreed, verbally, that, when appellees complied with the same, Britton would execute an assignment to them of one-half of the net profits to be earned under the 84-year lease, in form and substance, as far as applicable, substantially identical with the assignment of the 15-year lease; also, in answer to an issue given at the request of appellants, the jury found that, at the time the option contract with reference to the 84-year lease was executed, the rights of the parties were fully understood, and that the various terms, conditions, and limitations of the contract to be drawn in the future were fully understood and agreed to by the parties.

The court rendered judgment for appellees, establishing their ownership and right to one-half the net rentals to accrue to Britton, his heirs and assigns, under the two lease contracts made with Keating, and under each and every sublease of the premises, or any part thereof; that the legal title to one-half undivided interest in net rentals from said leasehold estates held by Dallas Trading Company under the transfer to it from Christopher, trustee for Britton, belonged to appellees; that said company held the legal title to the same as trustee for the use and

benefit of appellees, and by the decree it was required to each month receive the net rents to accrue and account for and pay same to them.

The decree defined what was meant by the term "net rents and profits," and provided that the Dallas Trading Company was at liberty to resign said trusteeship at any time, and was subject to removal according to the usage of courts of equity. The defendants other than the Dallas Trading Company were discharged, with their costs.

The above and foregoing statement is our conclusion as to the facts, including therein the findings of the jury in response to special issues, which we find amply sustained by the evidence.

We will now state our views on the material questions presented by appellants for our consideration:

[1-3] 1. It is contended that the written option of date January 11, 1922, was not such a memorandum of an agreement to sell net rentals to be earned under the 84-year lease as satisfies the statute of frauds.

If it could be said that an assignment of net profits or rentals to accrue under a lease for years is within the purview of the statute of frauds, which we do not concede, yet our opinion is that the memorandum was sufficient evidence of the verbal assignment to meet the requirements of the statute. Morrison v. Dailey (Tex. Sup.) 6 S. W. 426; Porter v. Memphis Land & Commission Co. (Tex. Civ. App.) 159 S. W. 497; Simpson v. Green (Tex. Com. App.) 231 S. W. 375.

Appellees, within the time mentioned in the agreement, exercised their option to purchase, performed their obligations thereunder by paying to Keating for the benefit of Britton the two unpaid installments due on the 84-year lease, and thus rescued it from forfeiture.

This performance by appellees and the acceptance of its benefits by Britton removed the agreement from the operation of the statute, even if it were within its terms. Belcher v. Schmidt, 62 Tex. Civ. App. 411, 132 S. W. 833; Dockery v. Thorne (Tex. Civ. App.) 135 S. W. 593.

Aside, however, from these considerations, any defense urged under the statute of frauds must be pleaded as a defense. This matter was not urged as a defense in the pleading by either Britton or the Dallas Trading Company. General Bonding Co. v. McCurdy (Tex. Civ. App.) 183 S. W. 796. We therefore overrule this contention of appellants.

[4] 2. A further contention is made that the provision in paragraph 9 of the assignment by Britton to appellees of the 15-year lease, to the effect that, if for any cause the subcontract with Collins should terminate, Britton obligated himself, his heirs and assigns, to re-lease or sublet the premises for the unexpired portion of the lease for the best rental obtainable, and account to ap-

pellees, rendered the assignment void and unenforceable for uncertainty, in that it was an attempt to assign profits or rentals having neither actual nor potential existence, and, furthermore, that at the time Britton is alleged to have assigned to appellee a half interest in net rentals to accrue from the 84-year lease he had no contract with any one insuring the collection of either rentals or profits from rentals, and, for this reason, this assignment was also void and unenforceable for uncertainty, in that net rentals or profits under these circumstances had neither actual nor potential existence.

Equity has always recognized the right of a party to bind himself to do anything not impossible to be done, and, when thus obligated, it is held that he ought to perform when it is not illegal to do so.

Applying this doctrine, equity will give effect to assignments of every kind of future and contingent interests and possibilities in real and personal property when made upon a valuable consideration.

Britton bound himself and successors during the life of the leasehold estates to protect the same from forfeiture, to sublet, collect rentals and pay over to appellees one-half of the net amount derived. These interests were expectancies or possibilities having potential existence. The assignments took effect as present contracts, enforceable when the assigned expectancies or possibilities happened. Nimmo v. Davis, 7 Tex. 31; Richardson v. Washington, 88 Tex. 344, 31 S. W. 614; Hale v. Hollon, 90 Tex. 427, 39 S. W. 287, 36 L. R. A. 75, 59 Am. St. Rep. 819; Barre v. Daggett, 105 Tex. 574, 153 S. W. 120; Daggett v. Barre (Tex. Civ. App.) 135 S. W. 1099; Farm Bureau Cotton Ass'n v. Stovall (Tex. Civ. App.) 253 S. W. 1101. This contention of appellants is also overruled.

[5-9] 3. The further contention is made that the leasehold estates owned by Britton, interests in which were assigned to appellees were defeasible estates, and not susceptible of being impressed with a trust. This proposition, in a way, brings under review the subject of trusts and trustees.

Perry, § 82, defines a trust as follows:

"Any agreement in writing made by a person having the power of disposal over property, whereby such person agrees or directs that a particular parcel of property or a certain fund shall be held or dealt with in a particular manner for the benefit of another, in a court of equity raises a trust in favor of such other person against the person making such agreement and any other person claiming under him, voluntarily or with notice."

Underhill, in his work on Trusts and Trustees, pp. 1 and 2, defines a trust in the following language:

"A trust is an equitable obligation, either expressly undertaken or constructively imposed by the court, under which the obligor (who is called the trustee) is bound to deal with certain

property over which he has control (and which is called the trust property) for the benefit of certain persons (who are called the beneficiaries or cestuis que trust) of whom he may or may not himself be one."

No particular form of words is required to create a trust. If the intention of the parties is that the property shall be held and dealt with for the benefit of another, a court of equity will affix to it the character of a trust. Bredell v. Fair Grounds, 95 Mo. App. 676, 69 S. W. 635; Barkley v. Lane, 6 Bush (Ky.) 587; Samuell v. Brooks (Tex. Civ. App.) 207 S. W. 626; Roberts v. Taylor (C. C. A.) 300 F. 257; Freer v. Lake, 115 Ill. 662, 4 N. E. 512; Winder v. Knox, 104 Va. 759, 52 S. E. 561, 3 L. R. A. (N. S.) 415; Des Moines Ry. v. Chicago, etc., Ry., 254 U. S. 196, 41 S. Ct. 81, 65 L. Ed. 219; Gordon v. Green, 10 Ga. 543; Taber v. Bailey, 22 Cal. App. 617; 135 P. 977; 26 R. C. L. 1180, § 18, p. 1182, § 19, p. 1254, § 101; 3 Pomeroy's Equity Jurisprudence, § 1009.

A trust is equally valid whether the creator constitutes himself or another the trustee. 26 R. C. L. p. 1191, § 27; 3 Pomeroy's Equity Jurisprudence, § 1007; Estate of Smith, 144 Pa. 428, 23 A. 916, 27 Am. St. Rep. 641; Cahlan v. Bank, 11 Cal. App. 533, 105 P. 765.

The doctrine is universally recognized that all classes of property or assignable interests therein may be impressed with a trust. Mr. Underhill, in his work on Trusts and Trustees, at page 57, states this rule as follows:

"All property, real or personal, legal or equitable, at home or abroad, and whether in possession or action, remainder, reversion or expectancy, may be made the subject of a trust, unless the policy of the law or any statutory enactment prohibits the settler from parting with the beneficial interests in it; or in case of real estate, unless the tenure under which it is holden is inconsistent with the trust sought to be created." 2 Beach on Trusts, p. 33, § 25; Gordon v. Green, supra.

The duty or the obligation assumed to receive and pay to another rents and profits from land has always been recognized as among active trusts. 26 R. C. L. p. 1176, §§ 12, 134; 3 Pomeroy's Equity Jurisprudence, § 1011; Winder v. Nock, 104 Va. 759, 52 S. E. 561, 3 L. R. A. (N. S.) 415; 2 Beach on Trusts and Trustees, p. 939, § 404.

It is true these leaseholds are defeasible estates. Notwithstanding this fact, however, they constitute property, and may be assigned and dealt with accordingly. We are not at liberty to assume that those in succession to Britton will permit the estates to become forfeited. Appellees sought to guard against this contingency by obligating Britton, his heirs and assigns, to keep the leases in full force and effect, and to save and keep them harmless from liability. If these estates should become forfeited, a new situation will arise, with which we are not now interested.

[10] 4. It is also contended that the covenants of Britton to collect and pay net rentals to appellees do not run with the leasehold estates, and, at best, are mere personal covenants of Britton from which he was released when Christopher, his trustee for creditors, took over the properties; that the same are not binding on the Dallas Trading Company, the purchaser from Christopher, and, for this reason, the court erred in decreeing that the title held by the trading company is subject to a trust in favor of appellees.

It cannot be well denied that Britton covenanted with appellees to preserve, hold, and manage the leasehold estates for the joint benefit of himself and appellees; in other words, a trust relation was created between him and appellees. Appellants took their interests in succession to Britton with notice of this trust relation. It follows, therefore, that they hold the property subject to the trust, and must either execute the same or convey to any trustee the court may appoint.

This doctrine is announced by Perry in his work on Trusts, vol. 1, § 346, in the following language:

"It is now a universal rule that all those who take under the trustee, except purchasers for a valuable consideration without notice, take subject to the trust and they must either execute the trust themselves or convey the property to new trustees appointed by the court. Thus the heir, executor, administrator, devisee and the assignee by deed, or in bankruptcy, are bound by the trust. If the trust estate is forfeited to the Crown or to the state, it is still subject to the trust."

Also, see, 26 R. C. L. p. 1237, § 84, page 1362, § 225; Hughes v. Hughes (Tex. Com. App.) 221 S. W. 970; Union Pacific Co. v. McAlpine, 129 U. S. 305, 9 S. Ct. 286, 32 L. Ed. 673; Mechanic's Bank v. Seton, 1 Pet. (26 U. S.) 299, 7 L. Ed. 152; Carpenter v. McBride, 3 Fla. 292, 52 Am. Dec. 379; Belcher Land Mtg. Co. v. Clark (Tex. Civ. App.) 238 S. W. 689; U. S. F. & G. Co. v. Citizens' State Bank, 36 N. D. 16, 161 N. W. 562, L. R. A. 1918E, page 332; Indiana, I. & I. Ry. Co. v. Swannell, 157 Ill. 616, 41 N. E. 989, 30 L. R. A. 294; Underhill on Trusts & Trustees, p. 41; 8 Pomeroy's Equity Jurisprudence, § 688.

The court, in Gage Lbr. Co. v. McEldowney, 207 F. 255, 124 C. C. A. 641, announced the rule as follows:

"A trustee in bankruptcy, * * * an assignee for the benefit of creditors, and a receiver under the state law, take the property of the debtor subject to the rights of third persons; the equitable rights of such persons not being changed by bankruptcy proceedings, but all obligations 'of the same' of a legal or equitable character remaining undisturbed thereby."

To the same effect see Midland Bank v. Brightwell, 148 Mo. 358, 49 S. W. 995, 71 Am. St. Rep. 608; Mannix v. Purcell, 46 Ohio St. 102, 19 N. E. 572, 2 L. R. A. 753, 15 Am. St. Rep. 562; Des Moines Bridge Works v. Plane, 163 Iowa, 18, 143 N. W. 866; Gluck v. Therme, 154 Iowa, 201, 134 N. W. 438; Muller v. Kling, 209 N. Y. 239, 103 N. E. 138; Commercial, etc., Bank v. Scotland, 158 N. C. 238, 73 S. E. 157; Paddell v. Janes, 84 Misc. Rep. 212, 145 N. Y. S. 868; Silsby v. Boston, 176 Mass. 158, 57 N. E. 376; Helm v. Gilroy, 20 Or. 517, 26 P. 851; Burrell on Assignments, p. 616.

We therefore overrule this latter contention of appellants.

We have given careful consideration to all assignments and propositions urged for reversal, and have discussed those we deemed of most materiality, but, finding in none of them reversible error, the judgment of the court below is affirmed.

Affirmed.