## BONNEVILLE LUMBER CO. v. J. G. PEPPARD SEED CO.

No. 4676.   Decided October 6, 1928.   (271 P. 226.)

*Tangren & Crafts,* of Delta, for appellant.

*Sam Cline,* of Milford, for respondent.

THURMAN, C. J.

The complaint charges the defendant in two causes of action with unlawfully converting to its own use certain

alfalfa seed grown and situated in Millard county, Utah, during the years 1924 and 1925. Plaintiff bases its claims to said alfalfa seed upon an indebtedness evidenced by a promissory note for $400, secured by a crop mortgage purporting to have been executed by one Clyde Sampson and wife March 10, 1924. The note and mortgage are attached to the complaint as exhibits A and B respectively, and on the face thereof appear to have been executed in the manner and form required by law. The mortgage was filed for record in the office of the county recorder of Millard county. The mortgage covers growing crops and crops to be grown, consisting of "10 acres of sugar beets and all crops of every name, nature and description which have been or may be grown, cultivated or harvested during 1924, 1925 and 1926" upon a certain 40-acre tract of land described in the mortgage. The indebtedness secured by the mortgage was not paid; the mortgagor sold the alfalfa seed grown on the land in 1924 and 1925 to the defendant seed company, and plaintiff instituted this action to recover the value of the seed, alleging that defendant unlawfully converted the same.

Defendant, answering the complaint, alleged, upon its information and belief, that on March 10, 1924, the said Clyde Sampson and wife executed and delivered to the plaintiff a mortgage in blank to secure payment of a promissory note for $400, with the distinct understanding that said mortgage should cover only 10 acres of sugar beets grown upon the land described in the mortgage, and that no other crop should be included. Defendant alleged it was further understood by plaintiff and said mortgagors that the Peppard Seed Company, defendant, was to have a mortgage upon the alfalfa seed grown upon said premises. It is further alleged in the answer that the mortgagors attached their signatures to said mortgage in blank, and that the plaintiff, well knowing the understanding between it and said mortgagors, wrote in the blank mortgage form the words "10 acres of sugar beets" with pen and ink, but neglected to erase or cross out the words "and all crops of every name and

nature and description." Finally, it is alleged that the mortgage "does not constitute any mortgage lien or title in or to any hay, alfalfa or alfalfa seed, or any other property whatever save except sugar beets alone."

Plaintiff's reply denied the allegations of the answer, except as admitted and alleged in plaintiff's complaint, and reasserted its claim under the mortgage, and alleged that it constituted a first and prior lien upon the alfalfa seed, for the value of which the action was commenced.

It thus appears that the only defense interposed by defendant to plaintiff's action is that the mortgage was not intended to cover alfalfa seed but sugar beets only, and that it was incumbent upon plaintiff, after inserting in the blank form the words "10 acres of sugar beets," to erase from the printed form the words "and all crops of every name, nature and description."

The trial court found the issues in favor of plaintiff, and judgment was entered thereon, from which judgment defendant appeals.

The instrument in question was in the main a printed form adopted for the mortgaging of seed. There was a blank space for inserting a description of other kinds of property and also a blank space for a description of the land upon which the crop was growing or to be grown. These were filled in by the plaintiff after it was executed by the mortgagors in blank. It is not contended by the defendant that plaintiff was not authorized to fill in the blank space referred to. The contention is that the words referring to crops, other than sugar beets, should have been erased. Sampson, while testifying as a witness for defendant, stated positively that it was agreed between him and the plaintiff's manager, with whom he transacted business, that the mortgage should cover sugar beets only. Plaintiff's manager, upon that point, testified that Sampson did state that he expected to pay the note from the proceeds of sugar beets which he intended to plant on the land, but that there was no

understanding that sugar beets was to be the only crop included. Sampson admits that he never planted any sugar beets at all on the land in question. Alfalfa was growing on the land when the mortgage was executed.

In arriving at its conclusion, the trial court was no doubt influenced by the fact that, after Sampson sold the alfalfa seed to the defendant, the manager of plaintiff had several conversations with him concerning his disposition of the seed, and it does not appear in any of these conversations that Sampson made any claim that the mortgage did not cover the alfalfa seed or that it covered sugar beets only. It seems reasonable to believe that when he was being upbraided in these conversations for selling the seed he would at once have asserted that the mortgage did not cover alfalfa seed. Besides this, his reasons for not planting sugar beets as explained by him was that he found the land unsuitable for that purpose. Having promised to plant sugar beets which would be covered by the mortgage, as contended by him, and having failed to do so because the land was unsuitable, the question naturally arises in the mind of an honest man, Why did not Sampson communicate that fact to the plaintiff and, if possible, arrange for other security? Sampson made no such communication to the plaintiff, but in effect left plaintiff to believe that the obligation was amply secured by the mortgage upon all the crops of every name, nature, and description grown upon the land. Such disingenuousness on the part of Sampson, the mortgagor, was at least a circumstance the court had a right to consider in its endeavor to ascertain the truth. The trial court found specifically that there was no agreement or understanding that the mortgage should include sugar beets only and should not include alfalfa seed and other crops, and we are of opinion the evidence was sufficient to sustain the finding and judgment entered thereon unless the further contention of appellant is sound that the rule of ejusdem generis applies to the instant case and by that rule alfalfa seed is excluded. Ejusdem generis is a recognized rule of

construction, but, like other technical rules of construction, it should not be resorted to unless the meaning of the language used is obscure or doubtful. *State* v. *Davis,* 55 Utah 54, 184 P. 161.

It is a cardinal rule of construction, and the first to be applied whenever construction becomes necessary, that, unless technical terms are used, the language must be given its plain, ordinary, and obvious meaning. Davis Case, supra. If that rule is applied to the instant case, it is unnecessary to make further comment as to the meaning of the language in question here. Crops of every name, nature, and description are just as obviously included in the mortgage as are sugar beets, which are particularly mentioned. The only difference is that, while sugar beets, a particular kind of farm crop, is specifically mentioned, all other farm crops are referred to in general terms, but they are equally included within the mortgage. Our conception of the rule ejusdem generis, as applied to this case, is that, if the thing particularly described is a farm crop, then all other farm crops, although mentioned in general terms, are included, for the reason that they are ejusdem generis. But suppose the description in this case had been "10 acres of sugar beets, and all other property" situated upon certain land particularly described, and suppose further that Sampson in such case had sold defendant a horse instead of alfalfa seed, the defendant could successfully defend against an action by plaintiff for conversion of the horse because the horse would be excluded under the rule ejusdem generis. The definition of the rule, in the Davis Case, supra, is stated as follows:

"Where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated."

The logic of appellant's contention is that, because 10 acres of sugar beets are specifically mentioned, therefore the

general words following must likewise refer to sugar beets and nothing else. The effect of such contention is to give to the general words no meaning at all or a meaning wholly devoid of reason and common sense. Such an interpretation would fly in the teeth of the cardinal rule first above stated, that, unless technical terms are used, the language must be given its plain, ordinary and obvious meaning. The court is of opinion that appellant's contention upon this point is without merit, and therefore it is unnecessary to review in detail the cases relied on by appellant, which, in the main, are found cited in 11 C. J. p. 498, §§ 164 and 165; also 13 C. J. p. 537, § 501.

But there is another question to be determined. After the plaintiff rested and while the mortgagor Sampson was under examination as a witness for defendant, he testified that neither he nor his wife swore to the purported affidavits attached to the mortgage, either at the time they signed the mortgage or at any other time. He also testified that the execution of the mortgage was not witnessed by the person whose name as a witness is subscribed thereto as a witness, and that such witness was not present at all when the mortgage was executed. This evidence was objected to by plaintiff's attorney as being outside the issues presented by the pleadings. The court sustained the objection, whereupon defendant asked leave to amend its answer so as to deny the due execution of the mortgage. Plaintiff objected to the amendment as being out of season. The court took the matter under advisement and admitted the evidence pro forma with the understanding that, if the motion to amend was disallowed, the evidence would be stricken. Some time after the findings and judgment were entered in favor of the plaintiff, the court made a purported nunc pro tunc order denying the motion to amend and striking the evidence that had been admitted pro forma. The order denying the motion to amend and also the order striking the evidence, especially after the findings and judgment were entered, are alleged to be an abuse of discretion, and are assigned as error.

Amendments to pleadings, when seasonably proposed, are generally allowed with great liberality. When not seasonably proposd, it should be made to appear that they are at least offered in furtherance of justice. Before determining this question it is necessary to refer to the statute relating to the execution of chattel mortgages and also to some of the evidence. Compiled Laws of Utah 1917, § 470, provides, in substance, that, unless the property be delivered to and retained by the mortgagee, no mortgage thereof shall be valid as against the rights of any person other than the parties thereto, unless the mortgage, duly witnessed by at least one person, provides that the property may remain in the possession of the mortgagor, and also that it be accompanied by an affidavit of the parties that the mortgage is made in good faith to secure the amount named therein and without any design to hinder or delay the creditors of the mortgagor. In addition to the above, it is also an essential requirement that the mortgage be filed for record in the office of the county recorder of the county wherein the property is situated at the time of the execution of the mortgage. The mortgage in question here on its face purports to have been executed in strict compliance with the foregoing provisions of the statute. It purports to be witnessed by R. H. Billings, whose name is subscribed as a witness. It contains two purported affidavits, one by the mortgagors and one by the mortgagee. It purports to have been filed for record and recorded in the office of the county recorder of Millard county, in which the property was situated when the mortgage was executed. It is undisputed that the purported affidavits were actually signed by the mortgagors and the mortgagee, and, as to the purported witness to the execution of the mortgage, Sampson testified it was not witnessed in his presence, while Billings, the purported witness, testified that it was. There can be no question as to that. As to the affidavits, Sampson admitted that he and his wife signed their names thereto, but denies that they were sworn to before an officer or that any such officer was

present. That evidence is not contradicted except by the purported signature of C. D. McNeely, a notary public accompanied with what purports to be his official seal. The signature and seal are attached to both the affidavits of the mortgagors and the mortgagee. The mortgage, as executed and recorded, was unquestionably constructive notice to the defendant and all the world of the existence of a mortgage valid on its face. It nowhere appears in the record that defendant, when it purchased the seed from Sampson, inquired as to the defects dehors the record or that Sampson said anything to it concerning the mortgage. In addition to the record notice, there is substantial evidence to the effect that defendant was informed that plaintiff had a mortgage, at least before it purchased the 1925 crop of seed. Sampson testified that, when he signed the mortgage and affidavits, he intended to make it a good mortgage and intended to make it conform to whatever legal requirements were necessary to make it a good mortgage. It does not appear where McNeely, the notary, was, or whether or not he was available as a witness at the trial. It does appear, however, as before stated, that both Sampson and his wife signed the mortgage and signed the purported affidavits. It appears also that it was duly witnessed and recorded and was intended by the mortgagors to be a good valid mortgage as security for money they owed to the plaintiff. The mortgage was not given to secure a past indebtedness but to secure the plaintiff for building material sold to Sampson to build a house on his land. Plaintiff demanded security before it would sell him the material. The mortgage in question was given as security for such indebtedness, and the material was furnished by the plaintiff.

We have hereinbefore referred to Sampson's conduct in respect to this transaction. All of these matters were before the trial court before the findings and judgment were entered. Let it be conceded that Sampson did testify that he never made oath to the form of affidavit which he signed; and let it be further conceded that without such

affidavit the mortgage would be invalid as against the defendant. In view of all the circumstances we have enumerated, was the court bound to accept as true the testimony of Sampson as against the purported signature of the notary to which was attached his official seal? To so hold, in my opinion, would be to establish a dangerous precedent and one pregnant with incalculable mischief in the business of mankind. Besides all this, it cannot be contended that the proposed amendment to defendant's answer was in any sense in furtherance of justice. The mortgage as recorded was good and sufficient notice to the defendant, to say nothing of the actual notice it received. Defendant was in no manner misled to its prejudice by anything the plaintiff did. The proposition amounts simply to this: The defendant, after the plaintiff rested and when the evidence for the defendant was well advanced, proposed an amendment to its answer which flatly contradicted the first answer filed wherein the execution of the mortgage was admitted, thus injecting into the case a purely technical defense to be supported by evidence of doubtful credibility. This was the situation presented to the trial court, which heard all the evidence pro forma and thereafter denied the motion to amend.

The circumstances all considered, we are not inclined to hold that the court abused its discretion in denying the motion. It follows from this conclusion that the order striking the evidence admitted was not prejudicial to the defendant.

The judgment is affirmed at appellant's costs.

CHERRY, STRAUP, HANSEN, and GIDEON, JJ., concur.