FISHER v. BANK OF SPANISH FORK et al.

No. 5955.   Decided December 27, 1937.   (74 P. [2d] 659.)

Rehearing denied February 28, 1938.

*A. Ladru Jensen,* of Salt Lake City, and *Jensen & Jensen,* of Ephraim, for appellant.

*R. H. Andrus,* of Spanish Fork and *George W. Worthen,* of Provo, for respondents.

WOLFE, Justice.

Appeal from a ruling rejecting an offer in evidence of a purported mortgage on 1935 crops, which instrument was the basis of a claim that defendants had converted the crops on which it was claimed plaintiff had a mortgage right. Leslie E. and Eric O. Bylund and their respective wives, Delila and Sophia, executed to the State Land Board on October 28, 1932, a chattel mortgage on the following described personal property, to wit:

"All the crops of whatsoever kind or nature which have been or may hereafter be sown, planted, cultivated, grown or harvested during the year 1933, *and until the debt secured by this mortgage is fully paid,* on the following described tract of land in the County of Juab, State of Utah: [The description of the land is not material to the point in issue.]" (The italicized phrase is presented for construction.)

The mortgage was filed as No. 49,464 in the recorder's office of Juab county on November 8, 1932. On September 7, 1933, the lands on which the crops mortgaged were grown were conveyed by Leslie E. Bylund and his wife to Eric O. Bylund, father of Leslie, the said lands having been conveyed by Eric O. Bylund to his son some time in 1930, the record title remaining in Leslie E. Bylund until this reconveyance on September 7, 1933.

On July 1, 1935, Eric O. Bylund executed and delivered a chattel mortgage to the Bank of Spanish Fork purporting to cover the wheat crop of 1935 upon the said lands. The bank, on August 1, 1935, by its cashier, H. A. Gardner, took the wheat and sold and delivered it to the defendant Leland Milling Company. Plaintiff claimed that the language of the mortgage to the State Land Board above quoted covered the crops of 1933, 1934, and 1935, and for the next two years covered by a renewal affidavit; that, therefore, the

bank, Gardner, and the Milling company were guilty of conversion.

This action was brought to recover for conversion of the 1935 crops. It is alleged that the State Land Board, subsequent to August 1, 1933, and before this action was brought, assigned for a valuable consideration all its causes of action against defendants for conversion of said wheat. No point is raised as to the assignability of the tort action for conversion. Defendants on the trial objected to the introduction of the mortgage of October 28th to the State Land Board on the ground that the language thereof was too indefinite to cover the 1935 crops, or at least too indefinite to give notice to third parties that it covered such crops, if it was intended to do so. The objection was sustained. The trial court refused to admit the instrument *on the ground urged.* The plaintiff, thus being prevented from introducing the very instrument on which his claimed rights were founded, could not show a conversion and a nonsuit resulted. The assignment of errors brings up the court's ruling rejecting the instrument as error.

Defendants for the first time on appeal contended that the mortgage in question could not cover the 1935 crops because at the time of its execution, Eric O. Bylund was not the record owner of the land on which the 1935 crops were to be grown, his son Leslie being the record owner. The contention was based on the ground that a crop mortgage covering future crops grown on land not then owned by the mortgagor is void. The defendants had interposed a general denial to the charge of conversion. It was contended that such a defense of void mortgage should have been specifically pleaded and urged in the lower court. Under our view of this case, it is unnecessary to decide these questions. In passing, it may be pointed out that it is the policy of the law to require parties to expose all their theories on which they base a claim or a defense in the lower courts so that their adversaries and the court may be apprised of them. A new theory raised for the first time in the appellate

court as a basis to sustain a claim or a defense will ordinarily not be considered. But distinction must be made between a theory of claim or defense and a principle of law which, overlooked by the lower court in its reasoning, would sustain its ruling. A right ruling sustainable on correct legal reasoning, even though such correct reasoning takes in legal syllogisms not entertained by the lower court, will be upheld even though the lower court based the ruling on wrong legal reasoning. The appellate court is not confined to an examination of the correctness of the legal propositions on which the lower court based its ruling, but will examine the correctness of the ruling and may sustain it on reasoning which involved an entirely different chain of legal syllogisms. The distinction between urging new legal reasoning in the appellate court to sustain or defeat a ruling of the lower court and a new theory may in some cases be difficult to define. It is better left to specific cases. Suffice it to say now that we do not need to make this distinction because the result we reach is based on a finding that the language of the mortgage did not cover the 1935 crops.

For the same reason, it is unnecessary to consider whether the deduction may be made from the evidence that Eric O. Bylund on October 28, 1932, had some interest in the land *at that time,* which even under the theory that a crop mortgage is void if given by a person who does not at the time of the mortgage own or lease the land on which the crops mortgaged are to be grown, would have prevented the mortgage from being void.

For the same reason, it is unnecessary to determine whether at common law future crops yet unsown might be mortgaged and what the distinction between perennial and annual crops might be under such a rule; nor what the distinction under such rule would be between perennial crops, the natural fruit of the land, and the natural increase in flocks or herds or the wool yet ungrown; nor whether the cases of *Bonneville Lumber Co.* v. *J. G. Peppard Seed Co.,* 72 Utah 463, 271 P. 226, and *Carlquist* v. *Coltharp,* 67 Utah 514,

248 P. 481, 47 A. L. R. 765, expressly or by implication hold that chattel mortgages may be placed on crops yet ungrown or unsown; nor is it necessary to determine whether section 13-0-2, R. S. Utah 1933, pertaining to the voidness of mortgages after three years unless renewed by affidavit, by implication permits a mortgage on crops to be grown in the future within the first three years and within two years additional if renewed. A careful reading of that statute would seem to leave this question untouched as it seems to deal with mortgagable property and by expression or implication casts no light on what property may be mortgagable.

Having thus cleared the path of all these questions raised by the warring contentions of the parties, we now consider the question on which our decision rests. Plaintiff contends that the language of the mortgage quoted at the beginning of this opinion in express terms served notice on all persons dealing with crops to be grown on the land described that the State Land Board had a mortgage on all crops at least for 1933 and all succeeding years until the debt was paid. This contention is based on the language reading, "during the year of 1933, *and until* the debt secured by this mortgage is fully paid." It is contended that the provision in the mortgage should be read as follows, "All crops of whatsoever kind or nature which * * * may be hereafter sown, planted, cultivated, grown or harvested during the year 1933 and *which may be sown, planted, cultivated, grown and harvested* until the debt secured by this mortgage is fully paid." (The italicized portion is inserted to illustrate the contention of plaintiff.) The defendants contend that the language is too ambiguous and indefinite to notify a third party; that it is susceptible of being construed as being a mortgage alone on the crops of 1933, but to subsist on *those* crops until the debt is paid. As a matter of pure grammatical construction, we think there is much to be said in favor of plaintiff's contention. But as a matter of policy, we think that a mortgage intended to cover goods not yet in existence should be clear and distinctive, if not

emphatic, to affect the rights or transactions of third parties. As between the parties themselves, it might be shown what was intended or perhaps by strict construction given the content of meaning contended for by plaintiff, but third parties should not be compelled to indulge in refined analysis of language to determine whether property which came into being long after the execution of the instrument was untrammeled by its terms. Certainly, the policy of the law is such as not to encourage constructions which will affect the disposition of property which will not even exist until a considerable period after the execution of the document. This is illustrated in another way by the rule against perpetuities which affects property in esse. The policy of the law is that it be freed of restrictions against alienation after a life or lives in being and twenty-one years. While we do not intend to hold in this opinion that property to exist only in the future may not be mortgaged, leaving that question to future or past decisions, we do intend to hold that if such property is mortgagable, it must be by language regarding which there can be no doubt. And all the cases we have found which hold that crops not yet sown or in esse may be mortgaged are cases where the language of the mortgage definitely specified the years encompassing the crops or did the equivalent by using definitely emphatic language, such as "each succeeding year," "every year thereafter," "annually," or in which by the content of the mortgage it could be unequivocally determined that its terms covered a certain period. *Richardson* v. *Washington,* 88 Tex. 339, 31 S. W. 614; *Perkins* v. *Alexander,* Tex. Civ. App., 209 S. W. 789; *Strandin* v. *Spreiter,* 166 Minn. 396, 208 N. W. 26; *Truss* v. *Harvey,* 120 Ala. 636, 24 So. 927; *Merchants' National Bank of Devil's Lake* v. *Mann,* 2 N. D. 456, 51 N. W. 946; *Taylor* v. *Hodges,* 105 N. C. 344, 11 S. E. 156.

And, indeed, where the mortgage did not clearly state in terms the year or duration for which the crops were mortgaged or where by the mortgage it could not be *unequivocally* determined, the courts have held the mortgage did not give

to third persons sufficient notice. In *Pennington* v. *Jones,* 57 Iowa 37, 10 N. W. 274, 275, it was stated:

"The mortgage was therefore indefinite and uncertain, and we think the better rule is that before a mortgage on crops to be sown or planted can be regarded as valid as against third persons, the year or term the crops are to be grown must be stated. *This much, at least, should be required, and whether it would be sufficient is not determined in this case."* (Italics added.)

In the case of *McConnell* v. *Langdon,* 3 Idaho 157, 28 P. 403, the language was so indefinite as to make it impossible to know what year or years the mortgage was for.

"The year in which the crop was to be grown was not stated, nor was there anything in the description from which the year might be inferred or ascertained."

The quoted part is from *Livestock Credit Corporation* v. *Corbett,* 53 Idaho 190, 22 P. (2d) 874, 876. In this latter case it was held that language reading, "crops grown during the life of the mortgages," could be made definite because the maturity of the notes secured by the mortgages was December 5, 1931, and the life of the mortgage did not extend beyond its maturity date. Whatever criticism may be made of a holding that a mortgage becomes lifeless after its maturity date, the principle is recognized that by the terms of the mortgage its duration could be unequivocally determined.

In *Zaring* v. *Strauss & Co.,* 9 Cir., 30 F. 2d 313, 314, we seem to have a case quite in point. The language of the mortgage read,

"All crops of every nature and description which have been or may be hereafter sown, grown, planted, cultivated or harvested during the year 1925 and 1926, *and until said debt is fully paid."* (Italics added.)

The court said:

"That provision, as we construe it, placed a lien upon one crop only, the annual crop of the fall of 1925 and the winter of 1926. The appellants insist that the words 'until said debt is fully paid' extend the lien to all crops raised during succeeding years. * * * The ap-

pellants cite 11 C. J. 469, § 97, where it is said: 'A mortgage is not rendered indefinite by the fact that it covers successive crops until paid.' But the mortgage here in question does not cover, nor does it attempt to cover, 'successive crops until paid.' It covers only the crop of a specified year, and the words 'until paid' mean no more than that the lien on that crop subsists until the payment of the debt."

This case is unsuccessfully sought to be distinguished from the one at bar on untenable grounds.

The judgment is affirmed with costs assessed against appellant.

FOLLAND, C. J., and EPHRAIM HANSON, MOFFAT, and LARSON, JJ., concur.